## H. B. PROSSER and Another v. L. B. MANLEY and Others.[1]

July 18, 1913.

Nos. 18,090—(210).

**Assignments of error indefinite.**
   1. Where there were many rulings and several findings of fact, an assignment of error that "the trial court erred in denying plaintiff's motion for a new trial: (a) On account of errors of law occurring at the trial and duly excepted to by the plaintiff; (b) on the ground that the decision of the court is not justified by the evidence and is contrary to law,"—is too indefinite to be considered, as it fails to point out any specific error of law, or any finding not justified by the evidence.

**Decision sustained by findings.**
   2. The evidence is sufficient to sustain the findings of fact and the findings of fact are sufficient to sustain the conclusions of law.

**Assignment of error.**
   3. A contention not sustained by the findings and not presented by any request for further findings in respect thereto, and not presented by the assignments of error, cannot be considered.

Action in the district court for St. Louis county against L. B. Manley, James A. McLennan and Philip G. Hyde for an accounting for all moneys or properties received by them as compensation for effecting a sale of certain mining properties and to require defendants Manley, McLennan and Hyde to pay any sums which might remain unpaid on the notes executed by plaintiff and guaranteed by Manley and Hyde, and to discharge plaintiff from any liability on either of such notes. The facts are stated in the opinion. The case was tried before Dibell, J., who made findings and ordered judgment in favor of defendants. From an order denying plaintiffs' motion for a new trial, they appealed. Affirmed.

*Baldwin & Baldwin,* and *Buell, Abbey & Williams,* for appellants.

*Washburn, Bailey & Mitchell,* for respondents.

[1] Reported in 142 N. W. 876.

Taylor, C.

Plaintiffs, in the name of plaintiff Prosser, had a contract with J. George Arkoosh, owner of the "Comet" group of mining claims located in Idaho, for the purchase of such claims for the sum of $150,000. They paid $5,000 upon this contract on or before January 5, 1910. The remainder of the purchase price was payable in instalments, the first of which, in the sum of $15,000, became due January 20, 1910. They entered into this contract not for the purpose of buying the property themselves, but with the view of making a sale to others. In the early part of January, 1910, defendants Hyde and Manley became interested with them in an attempt to negotiate such sale. But, although they obtained an extension of time from Arkoosh, they failed to effect a sale under this contract and it was abandoned.

On March 24, 1910, Arkoosh, for the sum of $300, gave defendants an option to purchase the property on or before April 15, 1910, for the sum of $120,000, and an interest in any company that might be formed to operate the mines. Plaintiffs joined with defendants in securing this option, and, although not named as parties thereto, were in fact interested jointly with defendants therein.

Defendants entered into negotiations with certain Duluth parties to form a corporation to take over the option and purchase and operate the mines, the Duluth parties to furnish the necessary money, and the holders of the option to transfer it to the company for stock in the corporation. Plaintiffs and defendants agreed between themselves to accept 30 per cent of the stock for the option. The Duluth parties were willing to give them one-third of the stock, but insisted that this "promoter's stock," as they termed it, should be placed in escrow and should not draw dividends until those who advanced the money to pay for the property had received back their advances. On March 29, 1910, defendants reported to plaintiffs the terms upon which the Duluth parties insisted. On March 31, 1910, plaintiffs refused to accede to these terms and directed that certain papers, which they had executed for use in making the deal, be returned to them. On April 2, 1910, defendants reported to plaintiffs that, "our parties have finally absolutely declined to consider the proposition on

122 M.—29.

the basis proposed and we cannot afford to spend any further money on the deal," and returned the papers as requested. Plaintiffs in reply again refused to accede to the demands of the Duluth parties. On April 4, 1910, defendants wrote plaintiffs that they were unable to exercise the option, were unwilling to go to any further expense, had thrown up their hands, and were returning the abstracts to Arkoosh as they had no use for them. The option expired on April 15, 1910, without any further action by either plaintiffs or defendants.

On April 20, 1910, Arkoosh wired to defendants an offer to sell the property for $85,000 to which no reply was made. In May, 1910, M. W. Alworth, P. L. Williams, a mining engineer residing at Salt Lake, Utah, and defendants Hyde and McLennan, went to Idaho and examined the mines. On May 31, 1910, a contract was executed by Arkoosh, for a sale of the mines to Alworth, McLennan and Hyde for the sum of $50,000. McLennan and Manley were partners and McLennan apparently acted for both. Alworth and McLennan returned to Duluth, and on or about June 22, 1910, the contract was transferred to the Duluth-Moctezuma Mining Company, for 5,000 shares of the stock of that company. Alworth and defendants subsequently realized $2,450.50 from this stock, which was less than the expense incurred by defendants.

In the early part of January, 1910, plaintiffs desired $5,000 with which to repay a temporary loan. To procure this money, Prosser executed a note to Hyde, which was endorsed by Hyde and Manley. was secured by certain collateral furnished by Prosser, and was then discounted at a bank and the proceeds given to Prosser. When the note became due, Prosser paid the interest but gave renewal notes, indorsed by Manley and Hyde, for the principal, and furnished some additional collateral.

Plaintiffs claiming that, by reason of their prior relations with defendants, they are entitled to share in any profits received by defendants through a sale of the property, and that by agreement the note above mentioned was to be paid from such profits, brought this action for an accounting and to compel defendants to pay and satisfy

the note. The trial court found against them on the facts and directed judgment for defendants. A motion for a new trial was denied and plaintiffs appeal.

The first assignment of error is in these words: "The trial court erred in denying plaintiff's motion for a new trial: (a) On account of errors of law occurring at the trial and duly excepted to by the plaintiffs; (b) on the ground that the decision of the court is not justified by the evidence and is contrary to law."

This assignment does not comply with the rules and cannot be considered. It fails to point out any specific error of law or any finding not justified by the evidence and is too indefinite. "If the motion was made on the ground of errors of law occurring at the trial, an assignment of error would not be sufficient unless it specified the particular errors of law relied on." Stevens v. City of Minneapolis, 42 Minn. 136, 43 N. W. 842. "An assignment 'that the decision was not justified by the evidence' does not call in question any one or more of several specific findings of fact." Petzenka v. Dallimore, 64 Minn. 472, 67 N. W. 365; Smith v. Kipp, 49 Minn. 119, 51 N. W. 656; Lytle v. Prescott, 57 Minn. 129, 58 N. W. 688; Hunt v. O'Leary, 84 Minn. 200, 87 N. W. 611.

The second, third and fourth assignments of error challenge the eighth, ninth and tenth findings of fact.

The eighth finding is to the effect that defendants endeavored to dispose of the mining claims under their option of March 24, 1910, but were unable to do so, and that their rights under this option terminated April 15, 1910. The evidence supporting this finding is not only ample but there is none to the contrary.

The ninth finding is to the effect that defendants and one or more others obtained from Arkoosh, on May 31, 1910, an agreement to purchase the mining claims for $50,000 and disposed of this contract to the Duluth-Moctezuma Company, for 5,000 shares of the capital stock of that company; that this stock was sold for its actual value and the amount received therefor was insufficient to reimburse defendants and their associates for the expenses incurred in the trans-

action; and that defendants made nothing therefrom. The evidence is also sufficient to support this finding.

The tenth finding is to the effect that Prosser executed a note for $5,000 to defendant Hyde which was indorsed by defendants Hyde and Manley, and by their efforts discounted at a bank and the proceeds turned over to Prosser; and that Manley and Hyde indorsed the note for the accommodation of plaintiffs without receiving any consideration therefor.

Plaintiffs contend that defendants agreed that this note should be paid out of the proceeds of the property, if a sale were made, and, a sale having been made to the Moctezuma Company, that defendants should now pay the note out of such proceeds. Defendants deny making any such agreement and other facts in the case corroborate the defendants. The weight of evidence supports the finding.

The fifth and last assignment of error is that, "the court erred in its conclusion of law that judgment be entered that the plaintiffs take nothing by the action." Assuming that this assignment is sufficient to present the question as to whether the findings of fact justify the conclusion of law, we are clearly of the opinion that they do.

Appellants contend that a fiduciary relation in respect to the property existed between themselves and defendants at the time defendants and Alworth made the contract of May 31, 1910, with Arkoosh, and that they are entitled to share equally with defendants in any profits derived from that contract. This question is not presented by the assignments of error, and, even if it were, the findings of fact do not sustain the contention and no application was made for any other or further findings. Furthermore the trial court expressly found that there were no profits growing out of the transaction.

Order affirmed.