## ALBERT CZANSTKOWSKI AND ANOTHER v. LENA MATTER AND OTHERS.[1]

November 20, 1942.

No. 33,199.

*Ronald K. Colbert,* for appellants.

*Sidney Benson* and *Henry Spindler,* for respondents.

[1]Reported in 6 N. W. (2d) 629.

LORING, JUSTICE.

Action to reform deeds from defendants Lena and Elaine Matter to plaintiffs, Elaine acting through her guardian, Lena Matter. The deeds described the land as the SW ¼ of the NE ¼ of section 10 in the town of Franklin in Wright county, except the south five acres thereof, whereas it is claimed by plaintiffs that by mutual mistake there was omitted from the deed the south 12 rods and lot "A" of the NW ¼ of the NE ¼ of section 10, which the Matters also owned.

Elaine Matter was a minor in 1937, the time of the transaction, and her deed was given under a license, but she had reached majority prior to the trial.

At the close of the testimony, on its own motion the trial court dismissed the action on the ground that plaintiffs had "absolutely failed to make out a cause of action." They appeal from an order denying their motion for a new trial. There were no findings of fact, conclusions of law, or order for judgment, and the principal question presented is whether or not there is sufficient evidence in the record to have justified findings and conclusions and judgment for the plaintiffs as required by Minn. St. 1941, § 546.27 (Mason St. 1927, § 9311).

In Tharalson v. Wyman, 58 Minn. 233, 235, 59 N. W. 1009, 1010, Mr. Justice Mitchell, speaking for the court, said:

"A trial court has no right to dismiss an action on the ground stated, except when the evidence adduced for the plaintiff would not have justified a verdict or findings in his favor. The rule in this regard is the same whether the case is tried with a jury or by the court. If the evidence is such that it would justify findings in the plaintiff's favor, it is the duty of the court, under the statute, to give its decision in writing, stating the facts found and the conclusions of law separately. It is no answer to this to say that, if the court thought there was no evidence at all to justify a recovery by plaintiff, if it had made findings they would necessarily have been against the plaintiff, and therefore there would be no

prejudicial error except when the evidence was so conclusive as to require findings in his favor."

That case was sent back for a new trial, not for findings.

Plaintiffs here, in their motion for a new trial, assigned error upon the dismissal of their case and asked that the dismissal be set aside on the ground "that there was sufficient evidence to justify a verdict in favor of plaintiffs to reform the deeds." This adequately informed the court of plaintiffs' contention and, in the light of the statute, of its alleged error in failing to make findings. In this court they also assign error on the dismissal, and the defendants do not contend that plaintiffs were not prejudiced by the failure to make findings. That point is made for the first time in the dissent hereto upon the authority of Wood v. Wood, 137 Minn. 252, 163 N. W. 297, which reviewed an order of the district court in a case originating in the probate court where the single issue of competency was involved. It was not an adversary proceeding. The same is true of Swick v. Sheridan, 107 Minn. 130, 119 N. W. 791. Such is not this case.

The tract of land alleged to have been mistakenly omitted from the deed lies south of an east-and-west road which crosses the NW ¼ of the NE ¼ of section 10, 12 rods north of the south line of that 40. The Matters owned this strip but did not own the land north of the road. There is also a north-south road running near the east line of this tract and of the land described in the deed. The Matters owned 75 acres lying to the east of this road. Plaintiffs say, and there seems to be little or no dispute about it, that when they first talked about buying the land they were proposing to purchase that west of the north-and-south road which deviated a little to the east of the sixteenth line, but that, inasmuch as they expected that road to be straightened sometime in the future, they would take only the land west of the sixteenth line (referred to sometimes in the evidence as the section line).

The purchase of the land occurred about the first of December 1937, and the deeds from Lena and Elaine were dated on that day. Mrs. Matter, whose husband had been dead for some years, was

anxious to sell her farm, in which her minor daughter Elaine had an undivided interest. She sent her son Loren to interview plaintiffs with a view to selling them the whole farm. Plaintiffs were unwilling to purchase the whole farm at the time but said that they might buy that part which lay west of the north-and-south road above referred to. Mrs. Matter's son returned about a week later saying that they would sell. Plaintiffs finally agreed to buy that part of the farm for a lump sum of $2,500, and the parties went to Mr. Knoll, a notary in Delano, to make a down payment and have a receipt made out for it. The two plaintiffs, Mrs. Matter, and her son Loren were present. Knoll told them that he had to have a description of the land they were buying. The plaintiff Albert repeatedly testified that in the conversation preceding the making of the receipt the land was constantly referred to as all of Mrs. Matter's land west of the north-and-south road above referred to. This is important, because the receipt was subsequently taken to the office of Mr. Spindler, an attorney, and the description in the receipt was copied into the deeds.

In telling of the preliminary talks leading up to the purchase, Albert said:

"Well, we wanted to buy that land what was laying west of the road. That is the way I am saying it.

\*  \*  \*  \*  \*

"Q. What did you tell her you wanted to buy, that is what we want to know?

"A. I say that many times.

"Q. If you will just tell us now, that is what opposing counsel and the court wishes, will you tell what you told her you wanted to buy?

"A. The land west of the road.

"Q. Where is this road that you refer to?

"A. Between the land we bought and her house." (Mrs. Matter's house lay east of the north-and-south road.) He testified further:

"Mr. Benson: Do you mean, you say you bought all that was west of the road or all that was west of the section line?

"The Witness: It was in the—when we were buying it the talk was all west of the road, but when it came to the deeds' there we made it—she didn't even know that we didn't want this, only west of the line, because some day they would straighten the road anyway and it would be no good.

"Mr. Benson: You didn't buy it all west of the road, it was west of the line, is that right?

"The Witness: Yes."

Albert was corroborated by his brother August, who in telling what occurred in the office of Mr. Knoll, testified:

"The Court: What did you say to Mr. Knoll about the description of that piece of property?

"The Witness: We showed him on the map there, that piece on the west side of the road.

"Q. What was the north and south boundaries of that piece that you say is on the west side of the road?

"A. The north was the road.

"Q. The north was another road?

"A. Yes.

"Q. What was the south?

"A. The south was the land, neighboring land.

"Q. Neighboring land?

"A. Yes.

"Q. And you say the north boundary was this other road?

"A. Other road.

"Q. Is that an east-and-west road?

"A. East and west, that is right.

\* \* \* \* \*

"Q. Will you explain the conversation that you had with Mr. Knoll concerning the description that you gave him and the description that he wrote out?

"A. Knoll went there and came out and he said it is 35 acres

[referring to a previous statement that Knoll went behind the door and looked at a map].

"Q. Did he say anything further about the description that he put on there and the description of what you gave him being the same or different?

"A. No, there wasn't much after that.

"Q. What is that?

"A. There wasn't much talk after that. I was saying to the road because there was some there they exchanged with some other party on the other side of the road, they had to exchange some land there and about that, that is what I always say, to the road."

This testimony of August's, together with the inferences to be drawn from Mrs. Matter's conduct and that of the plaintiffs', is the strongest support for plaintiffs' case. August also testified that he was not aware that the east-and-west road was north of the section line (obviously meaning the sixteenth line, which in the trial was referred to as the "section line").

Mrs. Matter said that when plaintiffs made the offer to buy she consulted defendant Emma Spindler, the mortgagee, who generously recommended that she sell this land and that perhaps it would then save the rest of her farm. Mrs. Matter said:

"Well, I am the one that told them because Mrs. Spindler had told me if I could get a buyer for that land, any of it, she would like to help me out, maybe I could hold my farm. I tried everything, and then of course my son heard that them boys wanted some land and he went over there and took about a week and they came over and they thought it over and they would take *all the land across the road*. That is all I know about that. (Italics supplied.)

"Q. Then did you tell Mr. Spindler and Mrs. Spindler that you were going to sell this land to the Czanstkowskis?

"A. Sure, I wrote to them before I ever made the deal because I wanted Mrs. Spindler to know. I thought she was the boss, I wasn't any more.

"Q. Did you tell her what property you were going to sell to the Czanstkowskis?

"A. I told her that land across the road and she said she thought it was a good idea.

"Q. You say the land across the road?

"A. Yes, west of the road.

"Q. You mean the north-and-south?

"A. North-and-south road.

"Q. And you say the property over there—how much of that property over there were you selling to them?

"A. Well, you know they made me an offer, they said they would give me 2,500 for that *piece across the road* if I would want to sell it, and so I wrote to Mrs. Spindler and she said I should accept the offer and that is the way it was. *There might be a mistake,* I don't know." (Italics supplied.)

And again:

"A. They wanted to know what I wanted for it and I said I don't know what land is worth, and then they offered me 2,500 for that land west of the road. So that is all I know.

"Q. Do you own more property west of the road?

"A. Sure.

"Q. Or was that to be all the land west of the road?

"The Witness: That was all on west of the road that I know of, and the rest belongs the other way, that is all I know."

After the down payment was made at Knoll's office, the receipt was taken to Mr. Spindler's office, where the probate proceedings were attended to and the deeds drawn following the description in the receipt. Thereafter plaintiffs went into possession of all the Matter land west of the north-and-south road, including the tract here involved, and farmed it for four years. Mrs. Matter said that the first she knew that the deeds to plaintiffs did not cover the strip north of the sixteenth line was when the defendant August Berneck looked up the records when he was proposing to buy the remaining 75 acres. It appears that Berneck knew all

about plaintiffs' claims as to the land in dispute before he bought from Mrs. Matter. He stated that about a week before he bought the property he discovered that there was "a mistake or something that Czanstkowskis were farming a piece of land that Mrs. Matter was paying taxes on." He testified:

"Q. Then after speaking to Mrs. Matter in Mr. Spindler's office, did you go to the Czanstkowski's?

"A. Yes.

"Q. What was your conversation there?

"A. Well, when I went there I told them that they were farming a piece of land that they didn't have title to, that Mrs. Matter was paying taxes on, and they told me that they had title to all of their land."

Again, in testifying about the deal he made with Mrs. Matter, he said:

"Q. What did you say when you first dealt with her in the buying of this land, what did she say the land consisted of?

"A. Eighty acres.

"Q. Did you go out and look over this farm?

"A. Why, sure.

"Q. Did she show you, at the time you first went out, this six acres in controversy?

"A. No.

"Q. She didn't show you that, that that belonged to her farm?

"A. No.

"Q. She never claimed that that was part of her farm at any time until after you were in Spindler's office?

"A. She said, I have got 80 acres, so I bought for 80 acres.

"Q. A full 80 did you get?

"A. Less the cemetery and the *graveyard* [the latter evidently a clerical error for 'railroad'].

"Q. How much does the cemetery and railroad tracks take up?

"A. Well, what an ordinary railroad would take up.

"Q. I am asking you to answer the question.

"A. About three acres, and two acres for the cemetery.

"Q. About five acres?

"A. Yes.

"Q. In other words, your farm wouldn't be 80 but it would be a 75-acre farm?

"A. Yes."

And further on he says:

"Q. But you did know after you went out to Czanstkowski's that they thought they owned all that land, didn't you, this land in controversy?

"A. That they thought they owned it?

"Q. Yes.

"A. That they thought—no. I don't know if they thought they owned it or not. They said they had title to all of it.

"Q. If they say they had title, it meant to you that they thought they owned it, is that right?

"A. Yes.

"Q. Isn't that the ordinary interpretation, and they were farming it, were they not?

"A. Yes.

"Q. And had been for a number of years?

"A. Yes."

The only evidence opposing that of the Czanstkowskis and Mrs. Matter was that of the notary, who the Czanstkowskis claimed erroneously omitted the land in controversy from the receipt. He testified that he explained to the Czanstkowskis that the road which ran east and west was not on the sixteenth line, but was north of it; that he did not feel able to draft a receipt which would describe the strip north of the sixteenth line; and that they said it was a good piece of land anyway and that they would take the 35 acres although they thought it was more. The Czanstkowskis denied this conversation and claimed that they did not know that the east-and-west road was north of the sixteenth line.

There is, therefore, abundant evidence from which the court would have been justified in viewing as clear and convincing the testimony that the Czanstkowskis and Mrs. Matter were under the mistaken impression that the Czanstkowskis were buying and Mrs. Matter and her daughter were selling all of the Matter land west of the north-and-south road and that the 12 rods which lay north of the sixteenth line and south of the east-and-west road were included in the transaction. It is especially significant that the Czanstkowskis farmed the omitted land for four years. Their possession was open and notorious. August Berneck knew of it, and Mrs. Matter did not discover that the land in controversy had not been included in the deed until she and Berneck went to Mr. Spindler's office in 1941, when Berneck was proposing to buy her farm. She so testified. Mrs. Spindler held the mortgage on the Matter farm, and it was natural that they should go to her husband's office to discuss the deal. The record indicates that the mortgage was under foreclosure and that the Spindlers were anxious to help Mrs. Matter make the deal and get something out of the farm for her. Their attitude was entirely creditable. Mr. Spindler was in no way to blame for the alleged error in the deeds. In drafting them he merely incorporated the description that appeared in the receipt.

In the face of such testimony, it was error for the trial court to dismiss the case after both sides rested. The statute requires findings, conclusions, and order for judgment. Minn. St. 1941, § 546.27 (Mason St. 1927, § 9311); Tharalson v. Wyman, 58 Minn. 233, 59 N. W. 1009; Pioneer L. & L. Co. v. Bernard, 156 Minn. 422, 195 N. W. 140. Of course, Mrs. Spindler's rights as mortgagee would not be prejudiced. The record is not clear as to whether she took a new mortgage from Berneck. If she did, she took it with knowledge of plaintiffs' claims; if she did not and the old mortgage was kept in force, the worst that could happen to her security was that she might be compelled to sell the land on foreclosure in inverse order of alienation.

In discussing the case after both sides had rested, the court said, among other things:

"This purchaser buys the land, pays the purchase price, secured some of it by mortgage, and then for four years he held his peace with full knowledge of all the facts and circumstances, knowing all that transpired from beginning to end, stepped forward for the first time in a court of equity and asks that in the face of these— of this innocent investor and innocent purchaser that this court would exercise its equitable powers to reform a deed and take away, take away from an innocent purchaser and an innocent investor a mortgage on lands, and they have the nerve to come in in the face of that law and the required measure of proof that is necessary for them to have a standing in court and attempt to insist upon this court that that be done for them. Well, of course, if anything like that was done in the trial of a case by a judge on the kind of evidence that was presented here, then I would say the courts of this country are in absolute disrepute. No judge could think of doing any such a thing as granting the relief which the plaintiffs ask in this case, and this action will be dismissed upon the grounds that the plaintiffs have absolutely failed to make out a cause of action, and it is so ordered and determined by this court."

These remarks indicate that the court either overlooked or misconstrued the effect of what appears to be very compelling evidence in support of plaintiffs' contentions. We must, in the interest of justice, reverse the order of the trial court and remand the case for a new trial rather than merely send it back for compliance with the statute.

So ordered.

PIRSIG, JUSTICE (dissenting).

■ Assuming that the question has been adequately raised, the proper remedy for failure to make findings of fact, conclusions of law, and order for judgment is to direct them to be made rather than to put the parties to the expense of retrying the action. See

Pioneer L. & L. Co. v. Bernard, 156 Minn. 422, 195 N. W. 140. Ever since the decision in that case the uniform practice of this court in identical or similar situations has been to remand the case "for the making of a decision in accordance with the statute, the trial court to proceed with the case from the point at which the motion of defendants * * * was made." Hawkins v. Foasberg, 175 Minn. 252, 220 N. W. 951; and see In re Estate of Roberts, 166 Minn. 315, 319, 207 N. W. 629; Morrissey v. Morrissey, 172 Minn. 72, 75, 214 N. W. 783; Mienes v. Lucker Sales Co. 188 Minn. 162, 166, 246 N. W. 667; State ex rel. Boldt v. St. Cloud M. P. Assn. (concurring opinion), 200 Minn. 1, 15, 273 N. W. 603; State, by Peterson, v. Anderson, 207 Minn. 357, 291 N. W. 605; Fredsall v. Minnesota State L. Ins. Co. 207 Minn. 18, 23, 289 N. W. 780. This sound and consistent practice is now being ignored. This court is not entitled to assume that when the court below makes its findings and conclusions they will not be in accord with what the evidence produced justifies, and this notwithstanding the oratory that accompanied the dismissal. Until they have been made, we do not know what they will be.

■ Any error in this respect by the court below has not been properly raised. No request was made of the lower court that it make findings of fact, conclusions of law, and order for judgment. Moreover, appellants have not asked this court to reverse for this reason. For the proper procedure, see Pioneer L. & L. Co. v. Bernard, 156 Minn. 422, 195 N. W. 140. Under these circumstances, it has been held by this court, and properly so, that failure to make findings of fact, conclusions of law, and order for judgment cannot be made a ground of complaint. Wood v. Wood, 137 Minn. 252, 163 N. W. 297. For this reason alone, the decision of the lower court should be affirmed.

■ Since no request was made to the court below for findings and no error has been assigned in that respect in this court, the case should proceed here as though the findings most favorable to the defendants had been made. See Swick v. Sheridan, 107 Minn. 130, 119 N. W. 791. The only substantial assignments of error

of appellants are "that there was sufficient evidence to justify a verdict in favor of plaintiffs to reform the deeds in question" and "that the said dismissal is contrary to the evidence and is against the law." It has been uniformly held by this court that such general assignments of error are not sufficient. They must point out wherein the findings or decision are not supported by the evidence. Prosser v. Manley, 122 Minn. 448, 142 N. W. 876; Nye v. Kahlow, 98 Minn. 81, 107 N. W. 733 (and cases cited therein). This has not been done in this case.

■ If we are, nevertheless, irregularly to consider whether the evidence sustains the decision of the trial court, the question should be whether there is sufficient evidence to support findings favorable to respondents. In that respect the crucial question of fact is whether, through mistake, there was a discrepancy between the deed as executed and the agreement as made between plaintiffs and Mrs. Matter. No one can read the record in this case without observing the vague, indefinite, and sometimes evasive testimony of the plaintiffs on that point. Plaintiff Albert Czanstkowski insisted that their agreement with Mrs. Matter included "all of the land west of the road"—referring to the north-and-south road. But in his directions to Mr. Knoll he says he changed this to land west of the north-and-south section line. He admits that he made this change in describing the land to Mr. Knoll without the knowledge of Mrs. Matter. It was he who gave Mr. Knoll the description of the land to be covered. He gave him precise directions with respect to the east line of the property purchased. One is justified in believing that he described the north line of the property with equal precision, but when questioned on this his testimony became vague. He testified as follows:

"Q. How far north did you tell Mr. Knoll you wanted this property?

"A. I didn't say nothing. That was my brother, he showed how far.

"Q. You said you pointed to this piece on the map. Did you show him what the north and south lines were that you wanted?

"A. That is everything because it is a piece like this and when I pointed on this that means the whole piece because there is no line drawn across or nothing.

"Q. In other words, you mean to say that the lines of the north here—

"A. When I show you on this that means the whole piece."

This plaintiff testified that he knew that a quarter of a quarter section of land (the description was in those terms less the south five acres) meant 40 acres, and that he saw that the deed included only 35 acres when he received it. The receipt he received from Mr. Knoll when the down payment was made also specified 35 acres. Yet at the time of the receipt of these instruments, and for several years thereafter, he made no objection whatever. There is no testimony that at the time of the transaction he intended to buy more than the amount he received by the deed as executed.

While the corroborating testimony of the brother August adds somewhat to plaintiffs' case, its indefinite character is sufficiently indicated by that set out in the majority opinion. It should be added that August stated that he was depending on the plaintiff Albert most of the time in the transaction in Mr. Knoll's office.

As against this testimony is that of Mr. Knoll, a disinterested person, which is relatively clear and explicit. He says that the plaintiff Albert Czanstkowski stated to him:

"I will get that 40 acres in there, he says, and this five acres off at the south, I will get that 40. I said, that 40 doesn't go to the north road, how you going to get in there? * * * They are going to let us drive in there, he says, and if we come to that, that they won't let us drive in, we will buy the strip from Mrs. Kaeppe. Mrs. Kaeppe owned the adjoining piece of land there. So that is what he told me. Well, I said, if that is what you are getting, just that 40 acres, then I will fix up the receipt for you and I know what you want, so I did. * * * It was the 40 acres that he told me he was getting less the five acres on the south and that is the way I drew up the paper."

This testimony is denied by the plaintiffs, but it is not for us to measure the respective witnesses' credibility.

The lower court was therefore entitled to find that the mistake had not been established by clear and convincing proof. The contrary is not claimed by the majority opinion. The evidence set forth therein goes only to show that findings in favor of defendants were also justified. But it is not our function to pass upon the relative weight of the evidence. That is a matter for the trial court.

For the reasons given, the order of the court below should be affirmed, or, at the most, the case should be remanded with directions to make findings of fact, conclusions of law, and order for judgment.

PETERSON, JUSTICE (dissenting).

I concur in the dissent of Mr. Justice Pirsig.

STREISSGUTH, JUSTICE (dissenting).

I concur in the dissent of Mr. Justice Pirsig.