JAMES W. MIENES v. LUCKER SALES COMPANY.[1]

February 3, 1933.

No. 29,222.

[1]Reported in 246 N. W. 667.

*William F. Hunt* and *Calvin Hunt,* for appellant.
*Levy & Dretchko,* for respondent.

STONE, JUSTICE.

Tried without a jury, this case resulted in a decision for plaintiff. Defendant appeals from the order denying its alternative motion for amended findings or a new trial.

From September 12, 1928, to April 5, 1930, plaintiff was in the employ of defendant as a salesman of radio receiving sets under a written contract, which, on the latter date, was lawfully terminated by defendant. The decision below awarded plaintiff a recovery of $1,384.76. It was based upon application of the following determinative provisions of the contract.

"Merchandise must be sold at our regular dealer prices as quoted * * *.

"When other prices than those regularly quoted or special net prices or discounts are offered to the dealer, we will pay a commission of 3%. We offer a 5% commission on all business from selected list of accounts which list is attached to, and made part of this letter. Whenever other prices than those regularly quoted in

our catalog or on our regular price quotations or special net prices are offered, and merchandise is sold at such special prices or special discounts, we will pay a commission of only 3%, this commission to be paid on the net prices of goods sold, as full compensation for orders taken by yourself or business obtained by us from these accounts."

■ For some time before November 12, 1929, the regularly quoted price made by defendant to dealers, including those who were customers of plaintiff, was list price less 40 per cent. On that date, not by a letter issued to a few favored dealers, but by "bulletin #50," issued to all its customers, defendant announced some "additional" discounts, which in effect meant reduction in price. "Discounts up to $5,000 will be 40% less 5%," the bulletin stated, with additional amounts of from one to five per cent on purchases in excess of $5,000. The first fact issue comes in at this point, it being claimed for plaintiff that the new price must be considered one "regularly quoted in our [defendant's] catalog or on our regular price quotations," and so that he was entitled to five per cent commission on the accounts in question, which are among the selected list referred to in the contract. Defendant, on the other hand, contends that the prices, resulting from the additional discount offered in bulletin #50, should be considered, under the contract, "special net prices," that is, "other prices than those regularly quoted." This was altogether a fact issue, its determination governed by the manner of issue and use made of bulletin #50 issued by defendant November 12, 1929. We would not be at liberty to disturb the decision for plaintiff even if the contrary view appeared preferable, which it does not.

■ Defendant regularly offered and allowed customers paying their invoices in cash within a stated period a discount of two per cent. It was a premium on prompt payment and a custom regularly resorted to by merchants in all lines. The question arises whether plaintiff's commission should be figured on the invoice price or on that price less the two per cent discount where, in fact, defendant allowed it. Were it an original matter, coming here without deci-

sion by the parties themselves, we might have some difficulty in determining the intention expressed in the contract. The commission was payable upon net prices, and plaintiff agreed to the computation of his commissions upon them less "any credits allowed" thereon. But it appears quite satisfactorily, and doubtless was so considered below, that the contracting parties themselves have decided this question for us. With commendable candor counsel for appellants say:

"It is true that the record discloses that the 2 per cent discount allowed the dealers had never been deducted from respondent's sales until this action was commenced."

In other words, for its entire period the parties themselves construed the contract against defendant on this point. That is a practical construction which settles the issue. Wilmot v. Minneapolis A. T. Assn. 169 Minn. 140, 210 N. W. 861.

■ Credits in a substantial amount were allowed to some of the larger dealers on plaintiff's list to compensate, in whole or in part, for advertising of defendant's line done by them. Defendant's claim of the benefit of this advertising discount is made under the concluding sentence of the paragraph above quoted from the contract:

"If any returns are made, any credits allowed, or service charges are made on the merchandise sold," they shall be deducted in figuring commission.

This language, we think, allowed such credits only when given on particular merchandise. That necessarily would be true as to "returns" and "service charges." The "credits" referred to in the same connection must be likewise restricted under the rule noscitur a sociis.

Here again there may have been a practical construction in the dealings between the parties which is against defendant. But that aside, it is plain that the contract did not permit defendant to charge such general credits against plaintiff's sales. They were not taken from the price of particular merchandise. They were in no

sense special but rather general credits allowed some of the larger dealers in consideration of the volume of their business. The advertising credits worked reduction in ultimate payments by some customers without reducing the net prices for which the goods were sold and upon which commissions were to be computed.

■ The statute, G. S. 1923 (2 Mason, 1927) § 9311, requires a decision, after trial without a jury, establishing and classifying the controlling facts and law of the case. The decision should be self-explanatory, self-sustaining, and complete. Pioneer L. & L. Co. v. Bernard, 156 Minn. 422, 195 N. W. 140; Palmer v. First Minneapolis Tr. Co. 179 Minn. 381, 230 N. W. 257, 258. As to the facts, nothing should be left to implication. Counsel, as representatives of litigants and officers of the court, are entitled to a decision fully responsive to their sincere contentions. Neither upon them nor upon this court should be put the task of searching the record to determine just which way the trial court has disposed of any determinative issue. If possible, the facts should be found and stated so fully and clearly that either litigant can have the case adequately reviewed on appeal without bringing up the evidence. That does not help the printers any, but it saves money for the clients. It is not done as often as it should be. A little more diligence and accommodation on the part of counsel, the court's coöperation of course assured, will make for findings, in many more cases than now, which will enable us to review the case without aid from the evidence.

- But where, on appeal, it appears that all issues have been decided, we are not compelled to reverse simply because the decision below might well have gone into more detail. Here it is plain that all the fact issues have been determined as already appears. There might have been more complete statement. Less might have been left to implication. Yet the findings moved for by defendant would have been inconsistent with those made. The contentions of defendant are negatived by the decision as it stands. So, under the rule of National Surety Co. v. Wittich, 186 Minn. 93, 242 N. W.

545, and McCormick v. Hoffert, 186 Minn. 380, 243 N. W. 392, there will be no reversal.

Order affirmed.

OLSEN, JUSTICE, took no part in the consideration and decision of this case.