NELLIE CORAH v. WILLIAM J. CORAH.[1]

February 17, 1956.

No. 36,612.

*Joe A. Walters,* for appellant.

*Joseph L. Nathanson,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal by plaintiff from those parts of a judgment dismissing an action with prejudice in favor of defendant; providing that the

---

[1]Reported in 75 N. W. (2d) 465.

plaintiff take nothing from the defendant; and decreeing that plaintiff should not receive her costs and disbursements as against defendant. The appeal arises out of an equitable action instituted by Nellie Corah in October 1951, for an award from her former husband, William J. Corah, of alimony and a division of property. The said defendant obtained an absolute divorce by default from the plaintiff in December 1933 in the District Court of Hennepin County, Minnesota, which divorce was procured on constructive service and granted on the grounds of desertion. The plaintiff is now a resident of Colorado, and the defendant resides in Minneapolis and has been a Minnesota resident since 1929.

By way of a brief background: The parties were married in North Dakota on October 27, 1920, and continued to reside on farms in that state until the defendant left for Minnesota on September 21, 1929. Three children, now adults, were the issue of this marriage. It appears from the record that on September 12, 1928, plaintiff was admitted to the State Hospital, Jamestown, North Dakota, where she remained until May 25, 1929. Shortly after her admission to the hospital plaintiff's half sister, Margaret, came to the Corah home and kept house for defendant and the three children. Margaret continued to reside at the Corah home after plaintiff came home from the hospital and until shortly before defendant left for Minneapolis on September 21, 1929. It further appears from the record that early in September 1929, prior to the time that defendant left North Dakota, he commenced a divorce action against the plaintiff in North Dakota. She interposed an answer in that action and a cross complaint for a divorce or in the alternative a decree of separation. No final order of the court was made in that action nor does it appear that it was ever dismissed.

A few weeks prior to the commencement of the North Dakota divorce action plaintiff and the children temporarily moved to the farm of the then husband's father, a few miles away, while defendant and Margaret continued to reside on defendant's farm.

Before leaving North Dakota on September 21, 1929, the defendant herein held a public auction sale in North Dakota at which time all

of his farm machinery, household goods, and other property were sold, except a 1929 Chevrolet car and a one-half interest in a threshing machine then located at his father's farm. The defendant took the car with him when he went to Minneapolis. The net proceeds of the sale amounting to about $850 were left for the plaintiff. The half interest in the threshing machine also was left in North Dakota, which the divorce court's finding indicated would produce $1,000 a year. There was testimony to the effect that in the fall of 1930 and again in 1931 the defendant returned to North Dakota and requested plaintiff to come to Minneapolis but that she refused. The record also shows that from the time the defendant left North Dakota in September 1929 until he married Margaret on December 16, 1933, he supported her and that one child was born to them on June 21, 1930, and another in September 1936.

In any event the defendant in this action commenced a divorce action against the plaintiff in District Court in Hennepin County, Minnesota, in 1933. Summons and complaint were served upon her personally on July 13 of that year in North Dakota. She immediately consulted her attorney in that state with reference to the papers and left them without giving her attorney any instructions. There is testimony that she knew a divorce would be granted if she did not appear in opposition to the Minnesota action. On December 13, 1933, defendant William was granted a divorce in the Minnesota action by default on the grounds that plaintiff had deserted him August 25, 1929. Shortly thereafter she learned that the divorce had been granted.

Since his residence in Minnesota the defendant never provided any money for the support of his former wife but sent about $500 to his children, two of whom resided with him and Margaret in Minneapolis between the summer of 1938 and the fall of 1940.

After the defendant left North Dakota in 1929 his then wife and the children continued to reside in that state during which time she earned what income she could and this was later supplemented by a mother's pension. On December 30, 1936, plaintiff was again admitted to the State Hospital in Jamestown. She was released on June 13,

1937, and returned to the institution again on September 11 of that year, where she remained until about May 5, 1940. She then continued to reside in North Dakota until 1942 when she moved to Denver. Since that time she appears to have sought and found various types of employment. Since 1948 her average weekly take home pay has fluctuated between $27 and $32, plus overtime.

It is conceded by both parties that plaintiff never instituted any legal action to adjudicate any alleged rights for alimony or support money against her former husband up to the time of the commencement of this action in October 1951.

The trial court found among other things that in July 1933 the defendant herein being then and there a resident of Minnesota for more than one year commenced an action for divorce against the plaintiff herein, being clerk's file No. 342712 in the District Court of Hennepin County, Minnesota; that the summons and complaint in that divorce action were personally served upon the defendant (plaintiff in this action) in North Dakota on July 13, 1933; that on the following day she took the summons and complaint and discussed them with her attorneys in North Dakota with reference to the course of action, if any, she was to pursue in connection with said divorce action; that she was advised by her attorneys in that state that unless she employed attorneys in Minnesota to defend her that undoubtedly her husband would obtain a divorce by default; that she took no step whatsoever to contest said divorce action nor did she instruct her North Dakota attorneys to take any action in her behalf; that on December 13, 1933, the District Court of Hennepin County made findings of fact and conclusions of law granting her husband (defendant herein) an absolute divorce. Quoting from paragraph 4 of said findings in that case the court found:

"That three children have been born and are now living as the issue of said marriage, to-wit: Clarence Corah, who is now twelve years of age; Delores Corah, who is now ten years of age, and Harold Corah, who is now ten years of age. That all of said children are now in the custody of the defendant. That shortly after the defendant deserted the plaintiff as hereinafter stated, the plaintiff sold all

of his assets save and except a threshing machine and obtained therefrom after the payment of his debts the sum of approximately $850.00. That from said sum the plaintiff kept approximately $75.00 and left the balance for the defendant. That in addition thereto the plaintiff owned a half interest in a threshing machine approximately three years old. That said machine was in good condition and would cost when new approximately seven thousand dollars. That the use of said machine would produce a net income each year of approximately one thousand dollars."

The court in the instant case further found that after the 1933 divorce was granted the plaintiff herein learned that her former husband had obtained a divorce from her and that he had married her half sister Margaret; that she (plaintiff herein) made no demand for alimony for herself or support money for her children until March 22, 1951, when she engaged her present attorney who at that time notified defendant herein of the claim of his former wife which resulted in the commencement of this action in October 1951; and that during the interval since the 1933 divorce her former husband had remarried and had two children, the issue of the second marriage. The court also found that during the period between 1933 and 1946 the defendant herein was employed by various governmental agencies and received relief off and on during that period; that since 1946 he had been more successful; that his financial condition had changed and that his present wife Margaret had contributed considerably to the success of his business; also that the plaintiff in this action was also in a much better financial condition than she was at the time the divorce was granted in 1933, being employed at $50 per week and having accumulated certain monies. The court then found that the plaintiff herein wholly failed to make any satisfactory explanation for her failure to take any steps or make any demands on her former husband (defendant here) "for a period of eighteen years next following the divorce"; that her failure to take any steps whatsoever during that time must be considered as acquiescence in the divorce court's failure to grant her alimony in 1933;

and that she should be estopped from asserting any claim for alimony at this late date.

The court also found, which we consider pertinent, that the defendant in the divorce action (plaintiff here) was guilty of laches in asserting any claim which she might have asserted promptly if she had contested the divorce action in 1933 or made application for alimony promptly upon being advised that such action was pending and she should now be estopped from asserting any claim for alimony or share in her former husband's estate.

Another finding of the court which we will mention but which we do not consider determinative under our decision here is that the trial judge in the 1933 Minnesota divorce action could have granted alimony for the plaintiff here had he seen fit to do so; that he did not reserve jurisdiction to do so; that it was discretionary with that court to grant her alimony and that his failure to do so under the circumstances in paragraph 4, quoted above, of the findings of fact in the divorce action indicated an intention on the part of the court in the divorce action to refuse any alimony; and that plaintiff's present claim for alimony and a share of defendant's property is now barred upon the theory of res judicata.

The court concluded that the defendant was entitled to judgment dismissing the action with prejudice and that plaintiff should receive nothing except her attorney fees. In view of our opinion that there was evidence here to sustain the trial court's finding that the plaintiff was guilty of laches, we deem it unnecessary to attempt to pass on other findings made by the trial court.

It is well settled in this state that the Supreme Court will not reverse a finding having evidentiary support even though the court might find the facts differently if permitted to pass on them. Loth v. Loth, 227 Minn. 387, 35 N. W. (2d) 542, 6 A. L. R. (2d) 176.

While it is not the policy of this court to relieve a husband from the just and legal responsibility to his wife or family we have a somewhat unique and peculiar situation here which must be considered. It is undisputed that, when personal service was made in North Dakota in 1933 on the plaintiff here in the Minnesota divorce

action, she knew what the service meant; that she consulted her attorneys in North Dakota; and that she was informed of her rights and what she should do to protect them, yet she did nothing at that time nor for the next 18 years to assert her claims.

An examination of paragraph 4 of the findings in the divorce action in 1933 would indicate that at that time the defendant here turned over all his then assets to the plaintiff except $75 and a 1929 Chevrolet car. It is reasonable to assume that the plaintiff then knew that she received about everything her former husband had at that time; that the prospect of getting anything more from him was not good; and that she was willing to consider it "good riddance" so far as he was concerned and forget the matter. In any event she made no attempt to ask for any alimony at the time the divorce was granted and obviously she asked for no further property settlement then as apparently she had received practically everything he had. During all of the 18 years before these proceedings were commenced, we must assume that she knew that her husband had received a divorce from her, and it is reasonable to assume that if she had made the slightest effort she could have learned that her former husband had remarried and was living in Minneapolis. Even so, she did nothing to protect or assert her rights for about 18 years. In this respect the trial court said in its memorandum attached to and made a part of its order denying plaintiffs motion for correction, modification, amendments, additions, and supplemental findings and conclusions, or for a new trial:

"The within case was one of the most unusual ever tried by this Court. It was obvious that the plaintiff was vindictive in her attitude and was not interested in obtaining the relief except as it might hurt this defendant.

"She did not seek to vacate the judgment of divorce except as it did not provide for alimony and support. It was clear that the time the divorce was granted that Judge Waite took into consideration that in addition to the entire assets of William J. Corah that she had the benefit of the proceeds of such assets as well as that of the threshing machine which would earn approximately $1,000.00 a

year, as the Court found. The Court had personal jurisdiction over William J. Corah and could have ordered an allowance of alimony, but did not do so.

"The undersigned was satisfied that William J. Corah, on two occasions, made bona fide requests of Nellie Corah to come with him to Minnesota and reestablish a home, and was refused.

"It was very apparent that the within proceeding was instituted after the son of the parties spent some time with the defendant herein and learned that he was progressing well and was establishing a sound and profitable small business. The plaintiff saw an opportunity to take advantage of it and the whole atmosphere of the case was most revealing of her motive and purpose in initiating the action."

Under the facts and circumstances here we must conclude that the evidence sustains the trial court's findings that the plaintiff was guilty of laches.

The application of laches depends upon the facts of the particular case and rests largely with the discretion of the trial court. Elsen v. State Farmers Mut. Ins. Co. 219 Minn. 315, 17 N. W. (2d) 652; State, by Peterson, v. Bentley, 216 Minn. 146, 12 N. W. (2d) 347; Sheffield-King Milling Co. v. Sheffield Mill & Elev. Co. 105 Minn. 315, 117 N. W. 447; Hanson v. Sommers, 105 Minn. 434, 117 N. W. 842.

Laches in a general sense is such negligence in bringing an action or otherwise asserting one's rights as will preclude him from obtaining equitable relief. Lloyd v. Simons, 97 Minn. 315, 105 N. W. 902. The doctrine of laches is based on grounds of public policy which require for the peace of society the discouragement of stale demands. Cantieny v. Boze, 209 Minn. 407, 296 N. W. 491, 173 A. L. R. 321; Wheeler v. Whitney, 156 Minn. 362, 194 N. W. 777; Brockman v. Brockman, 133 Minn. 148, 157 N. W. 1086. It is well settled in this state that a party is barred by laches when the delay is so long and the circumstances of such character as to establish a relinquishment or abandonment of rights. Sweet v. Lowry, 131 Minn. 109, 154 N. W. 793.

While we commend the plaintiff for her apparent fortitude and perseverance through the years in supporting herself and raising her children, we are confronted with a proposition which makes it difficult for us to attempt to set up a rule which would grant her relief at this late date. If we were to say that after about 18 years of inattention or indifference in connection with a situation such as we have here she can now claim relief, we would be confronted in the future with a proposition as to just how many years might elapse under similar circumstances so as to enable an aggrieved party to seek relief.

Taking into consideration the lapse of time; the changed circumstances of the parties; the resulting prejudice to defendant's second wife and children at this late date, we cannot say that the record here indicates such an abuse of discretion by the trial court as would justify a reversal. Definitely for the good of society such matters must be disposed of sometime, and it is our opinion that under the situation presented here such time has long since passed and that the lower court's refusal to grant relief in the instant case must be affirmed.

Plaintiff is granted $350 attorney's fees in connection with this appeal.

Affirmed.