INLAND PRODUCTS CORPORATION v. DONOVAN INCORPORATED.
BOYER & GILFILLAN MOTOR COMPANY AND OTHERS, THIRD-PARTY DEFENDANTS.

82 N. W. (2d) 691.

April 18, 1957—Nos. 36,842, 36,867.

*Joseph A. Maun, Mandt Torrison, Jerome B. Simon,* and *Bundlie, Kelley & Maun,* for Donovan Incorporated.

*Oscar G. Haugland, Haugland & Abdo, W. E. Rumble,* and *Doherty, Rumble & Butler,* for Inland Products Corporation and third-party defendants.

MURPHY, JUSTICE.

This case is before this court for the second time. The opinion on the first appeal is reported in Inland Products Corp. v. Donovan Inc. 240 Minn. 365, 62 N. W. (2d) 211.

By way of a brief review, this action was commenced by the plaintiff, a distributor of farm machinery, claiming damages for certain alleged breaches in two contracts under which defendant was to manufacture farm implements, consisting of field cultivators and disc harrows, to be sold by plaintiff. Defendant denied the alleged breaches and counterclaimed for the contract price of certain completed implements, both delivered and undelivered, and for damages resulting from plaintiff's failure to complete the contracts.

In the trial from which the first appeal was taken the case was submitted to the court without a jury. The case involved two con-

tracts referred to in the former opinion, as well as here, as the cultivator contract and the disc harrow contract. After finding certain issues in favor of each party, the court awarded $8,396.56 to the plaintiff. There were extensive motions for amended findings and conclusions by both parties. The trial court made two amendments but otherwise denied the motions. Both parties appealed from the judgment entered pursuant to the amended findings and conclusions.

In the first appeal to this court, the case was remanded to the trial court for the vacation of the judgment and for additional findings relating to the existence and condition of the undelivered cultivators and harrows, and, if the trial court should deem it advisable, to take further evidence upon these issues.

Thereafter the trial court took additional evidence on those issues and made findings supplementing the findings of fact originally made and concluded that its original conclusions of law were correct. Thereupon judgment was again entered awarding plaintiff a recovery of $8,497.20 with costs and disbursements. Defendant now appeals from the later judgment, and so does plaintiff.

### Field Cultivator Contract

■ On the first appeal it was our opinion that, if, in fact, the undelivered cultivators were manufactured in accordance with the contract requirements and were appropriated to the contract, the plaintiff would be liable for the contract price of such items. The matter was remanded then because there was no finding relative to the existence or quality of the undelivered cultivators and the evidence was not so conclusive that this court could make any factual determination or conclusion.

At the second trial the court found that 551 of the 3,199 cultivators contracted to be sold were not delivered and that only 33 of these were produced or manufactured by the defendant. It further found that none of these 33 cultivators conformed to the contract requirements in that they were not equipped with solid pivot shafts as required by the contract but rather were equipped with hollow-tube pivot shafts with or without steel inserts. Defendant attacks

this finding as not supported by the evidence and claims that it is erroneous.

In reviewing the evidence, the findings of the trial court are entitled to the same weight as a jury verdict and will not be disturbed on appeal unless they are manifestly contrary to the evidence and without reasonable evidentiary support. Kiges v. City of St. Paul, 240 Minn. 522, 62 N. W. (2d) 363; Reiter v. Western State Bank, 240 Minn. 484, 62 N. W. (2d) 344, 42 A. L. R. (2d) 1064. This court will not reverse a finding having evidentiary support even though the court might have found the facts to be different if it were acting as a trier of facts. Corah v. Corah, 246 Minn. 350, 75 N. W. (2d) 465.

The only serious question raised at the second trial with reference to the field cultivator contract was whether or not the 33 undelivered cultivators were equipped with solid steel pivot shafts. In the pretrial order, the trial court stated that there was very little evidence in the record on this question and therefore granted permission to either or both sides to present additional testimony on that question.

From the evidence, there appears to be no dispute that in March 1950, some eight months after the delivery date, the 33 cultivators were equipped with solid steel shafts. This appears to have been clearly established through one of defendant's witnesses, an implement dealer from Stillwater, Minnesota, who purchased 32 of the 33 cultivators in March 1950 and who testified that the ones he purchased were all equipped with solid steel shafts at that time. It appears from the record that the cultivators were originally fabricated with a hollow-tube pivotal shaft, and it is plaintiff's contention that the solid shafts were not installed at the time the suit was commenced, but instead were installed sometime after August 5, 1949, and before March 1950. To offset this contention defendant introduced the testimony of several of its employees. Mr. Raymond J. Joslyn, defendant's engineer in charge of cultivator production, testified that after his return from a trip to South America in 1949 he agreed with plaintiff's representatives that the cultivators would be reequipped with solid pivot shafts and that he instructed defendant's shop superintendent to equip the cultivators with such shafts. Wit-

ness Lester H. Gill, defendant's shop superintendent, testified that he received Joslyn's order in the spring of 1949; that he ordered workmen under him to install solid pivot shafts in all cultivators on hand; and that he observed that this work was being done in the spring of 1949. Two other witnesses, Elliott F. Cunningham and La Voy Fischer, employed in defendant's plant in 1949, but not so employed at the time of the trial, each testified that they actually participated in the work of replacing the hollow shafts with solid shafts and that this work was actually done in the spring of 1949. This testimony appears to be unimpeached or uncontradicted in the record.

Defendant also introduced certain inventories as of January 18, 1949, and August 17, 1949, which disclosed that during this period enough of the solid steel raw material was used to produce 43 pivot shafts, and evidence that it had no other use for this particular raw material. Without going into further detail in connection with the testimony with reference to these inventories, we are satisfied that the defendant's records offer substantial proof of defendant's contention that at least 33 steel pivot shafts were manufactured prior to the commencement of this action.

Defendant also introduced from plaintiff's own records certain exhibits in connection with a transaction on August 11, 1949, wherein plaintiff delivered a solid steel pivot-shaft assembly to one of its customers. This would indicate that the assembly must have been delivered to plaintiff prior to the commencement of this action inasmuch as plaintiff's managing officer, Edgar William Boyer, testified that no shipment of cultivators or parts was made by defendant to plaintiff after the suit was commenced.

Plaintiff offered no testimony on the cultivator issue nor did it explain the source of the solid shaft in its possession and delivered to its customer on August 11, 1949. Plaintiff apparently relies on the fact that a search of the daily time-record cards kept by defendant's employees failed to produce timecards which specifically showed the work performed in equipping cultivators with solid shafts.

In view of all the evidence referred to herein we cannot agree that the failure to produce timecards specifically showing the work done in 1949 is sufficient support for a finding that the work was actually not done. Rather it appears to us that the failure to disclose cards reflecting this was explained by circumstances other than the fact that the work was not done. In the first place, no factory timecards could be found for the period March 13 to 29, 1949, a period when the work could have been done according to the testimony of the workmen. In explanation of the missing cards there was testimony that some timecards were pulled from the files in 1949 when this suit was commenced. Defendant contends that these cards were misplaced in the six years intervening before the subsequent trial, as it is apparent that these records were not referred to in the first trial. The evidence also indicates that the time spent on the replacement of the hollow shafts with solid shafts might possibly have been recorded on certain red timecards which were used to record overhead hours and which did not identify the particular work being performed as it appears that many hundreds of manhours were recorded on the red cards during the spring of 1949.

Under all of these circumstances the failure to locate timecards specifically showing this work after such a long period of time had elapsed can be given no substantial weight against the unimpeached and uncontradicted testimony of the four workmen above referred to, who testified that they ordered, supervised, and actually engaged in the work of replacing the hollow shafts with the solid shafts. It is therefore our opinion that not only is there an absence of substantial evidence to support the finding that the 33 undelivered cultivators did not conform to the contract requirement of a solid steel pivot shaft, but that the record here requires, as a matter of law, a finding that the completed undelivered cultivators did conform to the contract requirements on the date of tender.

Plaintiff contends further that in any event the trial court's conclusions as to the cultivator contract are supported by the finding of the second trial that the defendant had failed to manufacture about 551 cultivators, which was the balance of the plaintiff's order, and

had also failed to tender the cultivators to the plaintiff. It has been obvious throughout this entire matter that the defendant did not complete manufacture of all the cultivators called for by the contract. It seems equally apparent that this fact was occasioned by the plaintiff's failure to schedule any further deliveries of the completed cultivators. It appearing that the buyer did not intend to take any further machines, it would be the seller's duty not to incur any further costs that would increase the damages. So far as tender was concerned, plaintiff had consistently taken the position throughout these proceedings that it was entitled to reject the cultivators because they did not comply with the contract requirements. In plaintiff's reply it admitted that it had refused to accept further delivery of the cultivators and stated that the reason for such refusal was their defective condition.

In any event, these issues were not raised by the plaintiff on the first appeal and it made no request for such findings in its motion for additional findings after the case was remanded. The time to raise the sufficiency of the various considerations which would effect such a contention was in the original pleadings and trial, and it is now too late to suggest various collateral grounds for supporting the original conclusions. Such matters are beyond the mandate of this court on the first appeal and were, therefore, not open for consideration on remand. Holden v. Farwell, Ozmun, Kirk & Co. 227 Minn. 243, 34 N. W. (2d) 920.

On the matter of the field cultivators, therefore, the trial court is directed to enter a finding that the 33 completed, undelivered cultivators did have solid pivot shafts and conformed to the contract requirements. Defendant thus would be entitled to the contract price of such machines less the price received. We said in our first opinion that plaintiff's liability for the parts acquired by defendant to fulfill the cultivator contract depended upon whether or not plaintiff could rightfully refuse the undelivered, completed goods. We further said that if plaintiff wrongfully refused to accept and pay for such goods it would appear that it was also liable for the parts acquired by the defendant to fulfill the contract. M. S. A. 512.64. It therefore fol-

lows that in view of our direction to the trial court to enter a finding that the 33 completed, undelivered cultivators conformed to the contract requirements, which would entitle it to the contract price of such machines, defendant would also be entitled to the stipulated value of the parts acquired by it to fulfill the uncompleted balance of the contract. The trial court should therefore award this item of damages to the defendant.

## DISC HARROW CONTRACT

In connection with the disc-harrow contract the original findings of the trial court failed to determine whether or not the large number of undelivered harrows substantially conformed to the contract as modified. A finding in this matter was necessary in order to pass on defendant's contention that plaintiff had been permitted a double remedy of rescinding the contract and also damages for the breach of contract. Therefore the trial court was instructed to make additional findings and to take additional evidence if that was deemed advisable. After the remand of the case to the trial court, additional evidence was offered by both parties and the court made findings that the 534 undelivered harrows failed to comply with the contract requirements in several respects. Defendant now contends on appeal that these findings are not supported by the evidence.

The question of the condition of the harrows involved several different harrow parts and testimony on this matter was received at both trials. In the second trial, plaintiff introduced the testimony of several of defendant's former workmen who testified that certain defects existed in the harrows in September 1949 and it was stipulated that the harrows were then in the same condition as they were on August 5, 1949, when suit was commenced. This testimony was to the effect that the harrow parts, such as brackets, bearing spools, gang bolts, wood inserts, and bearing boxes were, among other things, not uniform, too long, not welded properly, and out of round.

Defendant's contention that the court's findings are without competent support in the evidence is based on the claim that much of the testimony in the second trial was inadmissible under a stipulation

of the parties. It also argues that the testimony of the workmen consisted of their offhand conclusions arrived at without any knowledge or consideration of the contract specifications.

While there is considerable conflict between the parties in this matter, it is our opinion that there is a reasonable basis and competent evidence to support the court's finding in this respect. We are satisfied after a review of the evidence as a whole, including that introduced in the first trial, that the court's finding No. 2 relating to the condition of the disc harrows must be sustained.

■ Defendant's final contention is that the lower court erred in refusing its offer to reconsider the question of damages for lost profit and permit it to offer proof that plaintiff had actually been selling harrows at a discount from the list price, and that plaintiff was selling its accounts receivable at a substantial discount which, if true, would have materially affected the amount of damages awarded to the plaintiff in the original trial. The court, in the second trial, restricted the defendant to evidence relating only to freight charges which plaintiff might have paid and rejected the other offers of proof.

In remanding this case we pointed out that the matter of freight charges would seem to be necessarily deductible if such expenses were borne by the plaintiff and that if the expenses were borne by the ultimate consumer or dealer they would not be deductible. We specifically stated that the trial court might well consider the matter further and make such additional findings as necessary to clarify this point. It seems clear to us that in remanding the case relating to this question of damages as a result of lost profits our mandate permitted the trial court only to consider the item of freight charges. Upon the second trial the freight item was abandoned and in accordance with our decision and the applicable law, as previously pointed out in this opinion, we are of the opinion that the trial court was right on remand in limiting the question to the matter of freight and rejecting defendant's offer of proof.

Plaintiff's appeal relates only to the question as to whether interest should have been included in its judgment from the time of the court's original findings of fact or from the time of its supplemental

findings after the case was remanded. In view of our determination that the judgment must be vacated, we deem it unnecessary to rule on that issue.

Reversed with directions to vacate the judgment below and to enter new findings, conclusions of law, and judgment consistent with this opinion.