LOUIS CAMENKER AND ANOTHER v. B. R. GREENE.

86 N. W. (2d) 708.

November 29, 1957—No. 37,107.

*Robert J. Karon* and *Harry T. Lathrop,* for appellant.
*Wheeler, Burns & Buchanan,* for respondents.

MATSON, JUSTICE.

Appeal from a judgment for the plaintiff cancelling and satisfying a mortgage note and mortgage on the ground that the sum secured thereby constituted not a loan but a downpayment on an oral contract for the purchase of an interest in land.

Plaintiff, the record owner of lakeshore property in St. Louis County, brought this action for the cancellation of a $5,000 note and the mortgage given to secure the same on the ground that the $5,000 paid

to him by the defendant was not a loan but, pursuant to an oral contract, was a payment for the purchase of an undivided one-half interest in such lake property. Plaintiff alleged that said note and mortgage were executed for the sole purpose of securing a return to the defendant of the purchase price in the event the plaintiff, under the oral agreement, either failed to register the property so as to give defendant a Torrens title or failed to improve a part of the lakeshore as a swimming beach.

Defendant contends that no oral contract for the purchase of an undivided one-half interest in the land ever was made or came into existence and that the $5,000 secured by the mortgage was purely a loan and not a purchase payment. He asserts that the court's finding of a contract is not sustained by the evidence and furthermore, that the contract as found by the court is, in any event, void under the statute of frauds.

The evidentiary conflict has already been resolved by the trial court. In passing upon the issues of whether the evidence sustains the finding of a contract, and if sustained, whether there has been sufficient part performance thereunder to avoid the statute of frauds (M. S. A. 513.05), we must take that view of the whole evidence which is most favorable to the trial court's findings.

Upon the conflicting evidence the trial court could reasonably find that as a result of negotiations conducted during the months of July and August 1953, defendant orally agreed to purchase an undivided one-half interest in the property on the condition that the plaintiff, at his own expense, was to secure a Torrens title and construct a swimming beach. This general oral agreement found written expression in the letter dated September 3, 1953, written by defendant's attorney to plaintiff's attorney who had played an active part in the negotiations. The purchase price of $5,000 was paid by check dated August 31, 1953. There is a reasonable basis in the testimony of the parties, and that of the attorney who supervised much of the negotiations, for a finding that defendant's advancement of the $5,000 in the form of a loan was in fact a payment of the purchase price and that the form of a loan was adopted to give defendant security for his advancement if plaintiff failed to provide a swimming beach

and a Torrens title, with the further understanding that the note and mortgage would be cancelled when plaintiff performed as agreed. In corroboration of this finding we have defendant's personal letter of November 6, 1953, addressed to the plaintiff's attorney wherein he said:

"The conversation, that I had with you regarding the note that I have in my possession which will be due on November 28th, was that I was to receive a mortgage on the lake property *until such time that Mr. Camenker is able to deliver to me a good title; also that the matter of the beach and the cabin that I am to have the use of is straightened out.*" (Italics supplied.)

Although the letter raises a new issue as to which cabin defendant was to occupy, it is reasonably to be inferred from the evidence as a whole that, after the parties had actually consummated their oral contract, afterthoughts arose as to the apportionment of the use of the two cabins and also as to the use of certain items of personal property and equipment in which each enjoyed an undivided one-half interest. After a contract has once been made, subsequent disputes as to rights under the contract, or as to collateral matters, provide no justification for an inference that no contract was ever consummated.

The above letter reasonably establishes that the defendant then recognized that a purchase contract existed and that he had paid plaintiff the $5,000 pursuant thereto. Further corroboration is supplied by defendant's conduct consisting of many affirmative acts performed in recognition of, and in reliance upon, the existence of an oral contract of purchase. In September, October, and November 1953, defendant asserted rights of ownership by occupying the premises. In preparation for his use of the premises for the 1953 deer season, defendant bought and installed two gas stoves so as to eliminate the inconvenience of chopping wood. Dissatisfied with the variety of padlocks in use on the premises, all of which required different keys, he bought a new set of locks keyed alike. He gave one passkey for these new locks to the plaintiff and the other key he has retained at all times. He bought two fire extinguishers. He also procured, through his own insurance agent, a new insurance policy covering the buildings, con-

tents, and equipment against loss from fire, windstorm, hail, etc., and in this policy he and the plaintiff are designated as the insured, without any indication that there was any difference in the character of their respective interests in the property. When the plaintiff commenced the construction of a swimming beach, the defendant insisted that a change be made to a different location.

Defendant not only used the premises during 1953 but also in 1954. He frankly admitted that in 1954 he, his wife, and grandchildren went to the premises on Sunday mornings and occupied one of the cabins. His testimony as to a misunderstanding between his wife and plaintiff's wife in August or September 1954, concerning a missing motor carried with it the clear implication that he and his wife assumed that he had a property right in the motor equal to that of the plaintiff. Despite defendant's denials, the evidence sustains a finding that he purchased the locks, stoves, fire extinguishers, and insurance on the basis that he and the plaintiff were to share the costs equally as owners on an equal-share basis. His testimony that his use and occupancy of the premises was by permission of the plaintiff, and not an assertion of the rights of an owner, is not convincing and could clearly be rejected by the trial court.

■ The evidence as a whole not only sustains the finding that the parties entered into an oral contract whereby the defendant purchased an undivided one-half interest in the premises for $5,000, but also sustains the further finding that after the contract was made the defendant immediately went into possession of his undivided one-half interest and has at all times since used and enjoyed the property as his own. Even though there is a sharp conflict in testimony as to the meaning to be assigned to the evidentiary facts, and most of those facts are here undisputed, the conflict is to be resolved by the trier of fact whenever different minds might reasonably differ as to the conclusions to be drawn from them.[1]

■ We have no difficulty with the statute of frauds in view of the positive manner in which the defendant took possession of the premises and paid the purchase price in reliance upon, and with unequivocal reference to, the vendor-vendee relationship. In Shaughnessy v. Eids-

---

[1] See, McCarty v. New York Life Ins. Co. 74 Minn. 530, 77 N. W. 426.

mo, 222 Minn. 141, 23 N. W. (2d) 362, 166 A. L. R. 435, we held that the taking of possession by the purchaser, acting under an oral contract for the transfer of an interest in land, coupled with the making of part payment of the purchase price, in reliance upon and with unequivocal reference to the vendor-vendee relationship, without proof of irreparable injury through fraud, is sufficient to avoid the statute.[2]

The judgment of the trial court is affirmed.

Affirmed.

---

[2]Followed in Holste v. Baker, 223 Minn. 321, 26 N. W. (2d) 473. See, Ehmke v. Hill, 236 Minn. 60, 51 N. W. (2d) 811; 31 Minn. L. Rev. 497.