# CAROGA REALTY COMPANY AND ANOTHER v. MONROE TAPPER AND OTHERS.

143 N. W. (2d) 215.

May 20, 1966—No. 39,687.

*Edmund T. Montgomery* and *Richards, Montgomery, Cobb & Bassford,* for appellants.

*Joseph L. Nathanson,* for respondents.

NELSON, JUSTICE.

This is an action by Caroga Realty Company as owner and Greyhound Lines, Inc.,[1] as tenant of premises at Seventh Street and First Avenue North in Minneapolis, which are the site of the Greyhound Bus Station, to enjoin defendants from interfering with the use by Greyhound of a right-of-way on the defendants' property adjoining the bus station property.

The trial court determined, after trial without a jury, that plaintiffs were not entitled to relief. They appeal from the judgment entered accordingly and seek its reversal with directions to the trial court to determine that plaintiffs were in possession of the easement above referred to on January 1, 1948; that they and their predecessors in title had been in open and adverse possession of the right-of-way constituting said easement for more than 15 years prior to the commencement of the action; that the provisions of the Marketable Title Act, Minn. St. 541.023, do not invalidate the rights of the plaintiffs in and to the right-of-way easement nor deny them any remedy for enforcement thereof; and that plaintiffs are entitled to the relief prayed for in their complaint.

The right-of-way in question is located within the city block in downtown Minneapolis bounded by First Avenue North on the northwest side, by Eighth Street on the southwest side, by Hennepin Avenue on the southeast side, and by Seventh Street on the northeast side. The claimed right-of-way easement runs from First Avenue North toward Hennepin Avenue to about the middle of the block. This right-of-way came into being in 1883 through the execution of a written instrument, recorded in the office of the register of deeds of Hennepin County, whereby one Shadrach Parsons and his wife acquired "a perpetual use and right-of-way" over the strip of land 11 feet wide and 136 feet long fronting on First Avenue North and contiguous to and adjoining the southwest side of the property then owned by the Parsons as the dominant tenant. The Parsons property thereafter passed by inheritance and purchase to Alice

---

[1] Substituted for The Greyhound Corporation, one of the original plaintiffs, which was successor to Northland Greyhound Lines, Inc. Since 1936 these corporations have been owners or tenants of the dominant tenement. Throughout the opinion all will be referred to as Greyhound.

Parsons Taylor, who conveyed it in 1936, by a conveyance in which the real estate description included the right-of-way easement, to Stacy Brothers & Merrill Company. Stacy leased the property to Greyhound, which owned the tract adjoining the Parsons tract on the northwest side. Greyhound thereupon took possession of the premises and constructed an extension of its bus depot thereon.

In 1956 Stacy Brothers & Merrill Company conveyed the Parsons tract, together with this right-of-way, to Greyhound, which in turn conveyed the same to plaintiff Caroga Realty Company. Caroga then entered into a lease with Greyhound for the use of the premises and this right-of-way for a term of 25 years.

In 1887 the then owner of the servient tenement conveyed a parcel of land 72 by 43 feet lying to the rear of the dominant tenement, together with "right-of-way as an alley" for use of occupants and owners of that parcel and lots fronting on Hennepin Avenue but subject to the existing right-of-way easement, the right-of-way described coinciding with the right-of-way granted to Parsons except that it was 12 feet rather than 11 feet wide.

Subsequent conveyances and mortgages of the servient tenement, including mortgages in 1948 by defendant Drolson Company, Inc., have all been made subject to right-of-way easement at this location without reference to the document of origin of such easement.

Plaintiffs agree that the trial court's findings of fact accurately set forth the "background evidence" summarized above, and accept the following finding pertaining to use of the claimed right-of-way:

"That Alice Parsons Taylor, one of the daughters of the said Shadrach Parsons * * *, did acquire the real estate and the easement * * *, and for a number of years prior to 1926, there was operated upon said real estate a certain wholesale tobacco business. That from 1926 to approximately July 1, 1936, there was operated on said real estate an automobile parking lot, a wash rack, and a hamburger shop. That for a number of years prior to July 1, 1936, there was a high board fence erected along the southwesterly side of said real estate above described, dividing said real estate from the right-of-way. That said automobile parking lot had its entrance and exit on First Avenue North, and that no cars could

enter said parking lot across the right-of-way because of the high board fence obstructing travel from the right-of-way to said parking lot."

The trial court also made the following findings:

"That on March 24, 1947, the Legislature of the State of Minnesota duly enacted the Marketable Title Act (M. S. A. Sec. 541.023); that said Act required that where the source of title has been of record at least 40 years, no action affecting the possession or title of any real estate shall be commenced by a person, partnership, corporation, state, or any political division thereof, after January 1, 1948 to enforce any right, claim, interest, encumbrance or lien founded upon any instrument, event or transaction which was executed or occurred more than 40 years prior to the commencement of such action unless within 40 years after such execution or occurrence there has been recorded in the office of the Register of Deeds or filed in the office of the Registrar of Titles in the county in which the real estate affected is situated, a notice sworn to by the claimant or his agent or attorney, setting forth the name of the claimant, a description of the real estate affected, and of the instrument, event or transaction on which such claim is founded, and stating whether the right, claim, interest, encumbrance or lien is mature or immature. That neither of the plaintiffs nor Stacy Merrill Company, the owner of said real estate, filed a notice with either the Register of Deeds or the Registrar of Title office of said Hennepin County, as required by said Act, and the easement became forever barred by operation of said Act unless said easement was being used or occupied by the plaintiffs on January 1, 1948.

\* \* \* \* \*

"That the evidence wholly fails to support the claim of the plaintiffs that the plaintiffs or either of them was using or occupying the easement above referred to on January 1, 1948, or was in possession thereof, or that such use, if any, which they made of the same was of sufficient notoriety to be known by the defendants or their predecessors in title so as to be considered as adverse possession."

As conclusions of law the trial court determined that plaintiffs were not entitled to relief and that the action should be dismissed upon the

merits; that by operation of Minn. St. 541.023, the easement claimed has conclusively been presumed to have been abandoned and is therefore barred; and that the premises are entitled to and should be relieved of the burden of said easement.

Plaintiffs concede the correctness of all findings of fact except the last one quoted above. They object that this finding does not conform to Rule 52.01, Rules of Civil Procedure, in that it fails to find facts specially and separately. They also assert that the finding in question is unsupported by the evidence and is contrary to law.

Rule 52.01, Rules of Civil Procedure, so far as pertinent here, reads as follows:

"In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment; * * *. Requests for findings are not necessary for purposes of review. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."

In State v. Adams, 251 Minn. 521, 89 N. W. (2d) 661, 663, certiorari denied, 358 U. S. 826, 79 S. Ct. 45, 3 L. ed. (2d) 67, this court in considering the review of findings generally said:

"In reviewing findings of fact, the rule in this state, prior to the adoption of Rule 52.01 of the Rules of Civil Procedure, has been that findings must be upheld if they are reasonably sustained in light of the evidence as a whole, and the new rule, although differently worded, makes no practical change in the method of review * * *."

Furthermore, the reviewing court is required to take that view of the evidence which is most favorable to the trial court's findings, Camenker v. Greene, 251 Minn. 106, 86 N. W. (2d) 708, and they will not be disturbed on appeal unless they are manifestly and palpably contrary to the evidence. In re Petition of Lippmann, 249 Minn. 1, 81 N. W. (2d) 100; Ketterer v. Independent School Dist. No. 1, 248 Minn. 212, 79 N. W. (2d) 428. Thus this court will not reverse a finding having evidentiary

support even though it might find facts differently if permitted to pass on them.

   ■   It is not within our province to go into an extended discussion of the evidence to prove or demonstrate the correctness of the findings of the trial court. The duty of this court is fully performed when it has fairly considered all the evidence and from it has determined whether it reasonably supports the findings. Maust v. Maust, 222 Minn. 135, 23 N. W. (2d) 537; Board of Education v. Sand, 227 Minn. 202, 34 N. W. (2d) 689. In the trial of cases like this one, the trial court has the primary responsibility of determining the fact issues, and in reviewing findings we are and should be guided by the fact that much must necessarily be left to the sound judgment and discretion of that court, which has the advantages, not possessed here, of observing the witnesses, fully hearing their testimony, and thus acquiring a thorough familiarity with all the circumstances of the controversy. Furthermore, where decisive facts found by the trial court are sustained by the evidence, the supreme court need not discuss specifically other challenged findings which would not change the result. Corah v. Corah, 246 Minn. 350, 75 N. W. (2d) 465; 1 Dunnell, Dig. (3 ed.) § 414.

Essentially, the question for this court is whether the evidence as a whole reasonably tends to support the findings. If it does, they should not be disturbed. We must be guided by the rule that when an action is tried by a court without a jury, its findings of fact are entitled to the same weight as the verdict of a jury and will not be reversed on appeal unless they are manifestly and palpably contrary to the evidence, a rule applicable whether the appeal is from a judgment or from an order granting or denying a new trial and whether the evidence is oral or documentary. Erickson v. Turnquist, 247 Minn. 529, 77 N. W. (2d) 740; State, by Peterson, v. Bentley, 245 Minn. 334, 71 N. W. (2d) 780; State, by Burnquist, v. Fischer, 245 Minn. 1, 71 N. W. (2d) 161; Lindahl v. State, 244 Minn. 506, 70 N. W. (2d) 866; Dempsey v. Meighen, 251 Minn. 562, 90 N. W. (2d) 178; Inland Products Corp. v. Donovan Inc. 249 Minn. 387, 82 N. W. (2d) 691; 1 Dunnell, Dig. (3 ed.) § 411.

   ■   In support of their claim that separately stated findings of fact were necessary to show that they did or did not have possession of the

right-of-way for purposes of the Marketable Title Act, plaintiffs cite State, by Attorney General, v. Riley, 208 Minn. 6, 293 N. W. 95. They characterize the finding in which the trial court stated that the evidence failed to support their claim that they were in possession or making such use of the easement as to be considered in adverse possession of it on January 1, 1948, as in effect a conclusion of law.

In the Riley case this court stated (208 Minn. 8, 293 N. W. 96):

"The determinative issue is one of title to real estate. It was tried and determined on the merits, but without findings of fact and conclusions of law separately stated as required by 2 Mason Minn. St. 1927, § 9311. Pioneer L. & L. Co. v. Bernard, 156 Minn. 422, 195 N. W. 140. Both need of practice and demand of statute are for a decision that, so far as may be, is self-explaining and so self-sustaining. Mienes v. Lucker Sales Co. 188 Minn. 162, 166, 246 N. W. 667."

In Martens v. Martens, 211 Minn. 369, 1 N. W. (2d) 356, this court said that where it appears that all issues have been decided by a trial court without a jury, this court was not required to reverse simply because the trial court might well have gone more into detail in its decision.

In the Martens case Mr. Justice Olson, speaking for this court, said (211 Minn. 371, 1 N. W. [2d] 358):

"* * * Of course, the burden of determining what the facts are rests upon the trial court. [Citations omitted.] We have examined the record with care and find no difficulty in sustaining the trial court in this respect. [Citation omitted.] We think the appeal presents only a fact issue. Litigants and their counsel should bear in mind that 'their zeal must not overrule their judgment. This court cannot help an appellant on a question of fact where the evidence permits a finding either way.'"

In Mienes v. Lucker Sales Co. 188 Minn. 162, 246 N. W. 667, this court noted that § 9311 required a decision, after trial without a jury, establishing and classifying the controlling facts and law of the case, and added that, if possible, the facts should be found and stated so fully and clearly that either litigant can have the case adequately reviewed on appeal without bringing up the evidence. However, we went on to say (188 Minn. 166, 246 N. W. 669):

"But where, on appeal, it appears that all issues have been decided, we are not compelled to reverse simply because the decision below might well have gone into more detail. Here it is plain that all the fact issues have been determined as already appears. There might have been more complete statement. Less might have been left to implication. Yet the findings moved for by defendant would have been inconsistent with those made. The contentions of defendant are negatived by the decision as it stands. So, under the rule of National Surety Co. v. Wittich, 186 Minn. 93, 242 N. W. 545, and McCormick v. Hoffert, 186 Minn. 380, 243 N. W. 392, there will be no reversal."

The finding complained of here also could have been more detailed. We are satisfied, however, that it and the other findings constituted an adequate determination of the fact issues before the trial court.

The questions thus presented are whether all the evidence in the record, taken as a whole, concerning use of the alley by Greyhound's express customers and its own buses requires a finding that plaintiffs were in possession of the right-of-way on January 1, 1948, so as to excuse their failure to file notice of claim pursuant to Minn. St. 541.023, subd. 6, and whether the evidence concerning the nature, notoriety, and adversity of the use, if any, which Greyhound and their customers made of the right-of-way during the period from January 1, 1948, to the commencement of this action requires a finding that such use, if any, was of sufficient notoriety and adversity to constitute "possession" for the purpose of notice contemplated by the possessory exception contained in § 541.023, subd. 6.

With respect to the use of the right-of-way, the record shows that between 1926 and June 1936 there was in operation on the tract to which the right-of-way was appurtenant an auto parking and auto washing business and a hamburger shop. The unimpeached testimony of Wave Harris, who with his father operated the parking business on this tract between 1932 and 1936, quite conclusively established that between those years there was a high board fence along the southerly line of the tract which extended to the rear of the lot and had no openings except a small door at the rear for the use of pedestrians. The testimony of Mr.

Harris further indicates quite positively that this parking lot had its own exclusive entrance on First Avenue North and that no cars could drive from the right-of-way or private alley onto the parking lot or vice versa because of the existence of the fence. It would appear that the owners and tenants of the Parsons tract made no use of the right-of-way easement and completely abandoned its use for several years prior to 1936.

On July 1, 1936, Stacy Brothers & Merrill Company entered into a new lease with Greyhound, for a term of 20 years commencing on July 1, 1936, covering both the premises of the original bus depot site, adjacent to the Parsons tract on the northwest, and the latter tract. This lease did not include in its description of the land demised the easement involved in this litigation and did not attempt to lease to the tenant any appurtenances or hereditaments appertaining to that land. This lease required erection by the lessor of a terminal building to cover the entire leased premises and the plans for the building presented to the building inspector's office showed that there was to be a ramp cut approximately 28 feet in width at the rear of the building to be erected, but no part of which was to extend into the private alley. More than 3 weeks after the lease of July 1, 1936, was entered into, Alice Taylor League, formerly Alice Parsons Taylor, transferred by a warranty deed dated July 23, 1936, and filed July 24, 1936, to Stacy Brothers & Merrill, Inc., the Parsons tract together with a perpetual right-of-way over the strip of land 11 feet wide which is the subject of this litigation.

Plaintiffs' witnesses testified that during the years 1936 to 1950, when Greyhound's express window faced First Avenue North, on occasion, when the curb parking space on First Avenue was filled, Greyhound customers pulled into the alley and parked their cars briefly while delivering express packages. The testimony was varied as to the frequency and duration of such use, if any, and it was almost uniformly admitted that when express customers did use the alley for temporary parking purposes, they did so without any knowledge as to whether it was a public or private alley and without any instructions from Greyhound or its employees to use it. *A search of the record indicates that no so-called express or package customers were called by plaintiffs as witnesses to prove such alleged use of the alley.* In later years, when parking in front of the Grey-

hound package window on First Avenue North was prohibited between 4 p. m. and 6 p. m. the express customers had trouble parking between those hours and, according to Greyhound's witnesses, used the right-of-way almost daily. Several witnesses who worked in the stores on Hennepin Avenue which were served by the alley during this period testified, however, that they never saw express customers parking in the alley and that if such parking did in fact occur with any significant frequency it would have blocked deliveries to their stores. There is evidence in the record that there were "No Parking" signs posted in the alley. From November 1950 until August 1960 express customers parked between 4 p. m. and 6 p. m. on the parking lot maintained by defendants on the servient tenement pursuant to an agreement between Greyhound and defendants. Under this agreement package and express customers of Greyhound were permitted to drive across the parking lot between 4 p. m. and 6 p. m. and park there or in the alley Greyhound claims is its right-of-way long enough to deposit their parcels in a chute in the wall of the depot adjacent to the alley or in the main entrance to the package department and then exit through the alley. Plaintiffs offered testimony about use of the alley by United States military vehicles during World War II, but their witnesses admitted it took place without direction from Greyhound.

The evidence about the use of the alley by Greyhound buses for temporary parking for the purpose of loading and unloading passengers on special camp or military charters is in conflict. Witnesses presented by plaintiffs to establish such use, almost all present or former Greyhound employees, were not able to testify with certainty concerning its regularity and frequency. As an example, John O. Junkin, who worked for Greyhound from 1925 to 1958, testified on cross-examination that the alley was used for loading camp charters only on "rare occasions." On redirect examination he attempted to deny this admission. However, none of the employees of Greyhound who directly participated in or supervised these claimed loadings in the alley had any authority or directions from their superiors in the company to do so, nor did they ever use it other than with the thought that it was a public alley being temporarily used by Greyhound for its convenience in the same manner as any

other public alley might be used. Plaintiffs introduced no written records to show either directives to employees to load in the alley or as historical evidence that such loadings did in fact occur in the alley. The testimony of plaintiffs' own witnesses made no greater claim to use of the alley for its chartered buses than that such use was irregular, to meet temporary needs, and was for very short intervals of time.

A number of defendants' witnesses, who had almost daily opportunity to observe the use of the alley from 1921 to 1963, testified that they never saw buses use the alley on any occasion. There is some evidence that during the period from 1926 to 1936, when a parking lot occupied the lot between the original depot and the alley, no use of the alley whatsoever was made by Greyhound. It is contended by defendants that the right-of-way plaintiffs claim to possess became useless and worthless in 1924 when the alleyway leading from its exit to Hennepin Avenue was blocked off by the erection of a building on the Hennepin Avenue entrance to the alleyway. The owner of the Parsons lot could no longer drive through the alleyway to Hennepin Avenue and, defendants contend, could have had no further use for the easement. They point to the erection of the high board fence on the dividing line between the Parsons lot and the right-of-way as proof that the right-of-way was abandoned as utterly valueless to the lot.

Plaintiffs contend that their witnesses gave positive testimony concerning use of the alley both by Greyhound's customers and its buses, which must prevail over the negative testimony offered by defendants' witnesses. They cite O'Leary v. Wangensteen, 175 Minn. 368, 221 N. W. 430, as requiring this result. In this case, however, unlike the O'Leary case, plaintiffs' witnesses were impeached and contradicted and their testimony was often not consistent. In stating the rule relied on by plaintiffs, this court in the O'Leary case stated the converse of that rule as follows (175 Minn. 372, 221 N. W. 432):

"* * * [I]f the evidence contains improbabilities or contradictions, appearing upon the record, furnishing reasonable grounds for not believing it true, or is irreconcilable with the facts shown by the record, it may be rejected."

Moreover, while plaintiffs have characterized the testimony of their witnesses as to the use of the easement strip as positive, a reading of their testimony including their cross-examination[2] suggests that characterization is hardly justified. Much of the testimony became vague and lacked positiveness.

The trial court was, of course, the sole judge of the credibility of the witnesses and the weight, if any, to be given to their testimony. Here, in view of the weaknesses in plaintiffs' testimony, the trial court properly gave consideration to the "negative testimony" presented by defendants. Such testimony, though negative in form, may be "affirmative in substance," Cotton v. Willmar & S. F. Ry. Co. 99 Minn. 366, 369, 109 N. W. 835, 837, 8 L. R. A. (N. S.) 643, 650, 116 A. S. R. 422, 425, 9 Ann. Cas. 935, 937, and is sometimes the only available evidence. In Purdes v. Merrill, 268 Minn. 129, 128 N. W. (2d) 164, 165, this court held:

"Negative evidence as to the nonexistence of signals has probative value sufficient to take to the jury the issue of negligence for failure to give signals where such evidence is based upon the testimony of a credible witness in full possession of his faculties that he did not see or hear such signals; to have probative value such evidence should be based upon an attentive and purposeful observation and should not be neutral in character."

In Forde v. N. P. Ry. Co. 241 Minn. 246, 252, 63 N. W. (2d) 11, 16, this court pointed out that negative evidence must be something more than equivocal evidence of the nonexistence of a fact and emphasized that such evidence has probative value when it is "based upon an attentive and purposeful observation by a credible witness in full possession of his faculties." Certainly defendants' witnesses in this case were in a position to hear and see that which they testified to. The record indicates that they were normal witnesses and that there was nothing to divert their attention to the extent that they were unable to take into full ac-

---

[2] It is well established that in determining what fact the testimony of any particular witness establishes or tends to establish, his whole evidence as brought out on direct and cross-examination must be considered. Kivak v. G. N. Ry. Co. 143 Minn. 196, 173 N. W. 421.

count their surroundings. The credibility of their testimony, as well as that of plaintiffs' witnesses, was therefore a fact issue to be determined by the trial court.

Section 541.023, subd. 5, of the Marketable Title Act provides:

"Any claimant under any instrument, event or transaction barred by the provisions of this section shall be conclusively presumed to have abandoned all right, claim, interest, incumbrance or lien based upon such instrument, event or transaction; * * * it being hereby declared as the policy of the State of Minnesota that, except as herein provided, ancient records shall not fetter the marketability of real estate."

See, also, United Parking Stations, Inc. v. Calvary Temple, 257 Minn. 273, 101 N. W. (2d) 208.

This court discussed the possession required by § 541.023, subd. 6, to avoid the presumption of abandonment created by § 541.023, subd. 5, in B. W. & Leo Harris Co. v. City of Hastings, 240 Minn. 44, 49, 59 N. W. (2d) 813, 816, saying:

"* * * [N]o notice having been filed, the statute bars that part of defendant's claim based upon alleged adverse possession occurring more than 40 years before this action was commenced unless, as defendant claims, it was in possession of the real estate within the meaning of subd. 6. If a claimant subject to the provisions of the statute has not filed the required notice, the only way he can avoid the statute's conclusive presumption is by being in possession at the time it would otherwise take effect. If at any later time he abandons his possession, the bar falls and he cannot revive his right by again going into possession. Thus, to avoid the conclusive presumption of abandonment imposed by the statute, the claimant's possession must be continuous. If the claim is based upon an instrument, event, or transaction which was 40 years old on January 1, 1948, the claimant's possession must have begun at least by that date and must continue until action is commenced; if it is based upon an instrument, event, or transaction which becomes or became 40 years old after January 1, 1948, the claimant's possession must begin or have be-

gun at the end of the 40-year period and must continue until action is commenced.

"A further question arises as to the nature of the possession required by § 541.023, subd. 6. In our opinion it must be present, actual, open, and exclusive and must be inconsistent with the title of the person who is protected by this section. It cannot be equivocal or ambiguous but must be of a character which would put a prudent person on inquiry."

See, also, Wichelman v. Messner, 250 Minn. 88, 83 N. W. (2d) 800, 71 A. L. R. (2d) 816, for a complete discussion of the Marketable Title Act.

In view of the holding in the Harris case, the trial court could well have determined that the testimony of plaintiffs' witnesses relating to the use of the alley by Greyhound and its customers, given full credence, did not establish possession which is open and exclusive, unequivocal, notorious, and unambiguous. Plaintiffs, however, cite Merrick v. Schleuder, 179 Minn. 228, 228 N. W. 755, as an authority which recognized the use of an alley by the plaintiff and by customers of the plaintiff as acts constituting adverse possession. In considering the evidence of public use of the area in controversy in the Merrick case, this court stated (179 Minn. 231, 228 N. W. 756):

"There is evidence for defendants that * * * there was a continuous open space through the block which was used in common by the owners and public without any thought of hostility to the record titles. But a special feature characterized the situation of plaintiffs' building in relation to the open space behind it. They did project their physical structure almost eight feet onto the ground of defendants. The outside cellar entrance, together with the rear door to the main floor, indicated a purpose to use the ground in the rear in a way in which it would not be used by the owners of adjoining property or the public. To the extent that plaintiffs' building was so projected onto defendants' property there was an appropriation of the ground, necessarily adverse, hostile and exclusive."

The court then went on to state the general rule, inapplicable because of

the special circumstances which existed there (179 Minn. 231, 228 N. W. 756):

"* * * [W]here the owner of land opens a way across it for his own use the fact that he sees his neighbor or other parties use it, under circumstances that do not tend to injure it or interfere with his own use of it, will not justify the inference that he is yielding anything of his ownership or that the other users are proceeding adversely or in hostility to his own right."

None of the special circumstances of Merrick exist in this case. Neither plaintiffs nor any of their predecessors in title ever built any structure abutting onto the right-of-way.

That knowledge of the existence of an easement is an element in establishing possession under § 541.023, subd. 6, was indicated by this court in United Parking Stations, Inc. v. Calvary Temple, 257 Minn. 273, 277, 101 N. W. (2d) 208, 211, one of the facts which the court considered in coming to its decision being that "during the time they [tenants of the owner of the dominant estate] were leasing the parking lot and were in possession of it they knew nothing of the existence of an easement over the easterly 14 feet of church property." We fail to find any among the cases cited holding that use such as was shown by plaintiffs is sufficient to constitute possession for the purpose of notice contemplated by § 541.023, subd. 6. This court made it clear in Farmers State Bank v. Cunningham, 182 Minn. 244, 246, 234 N. W. 320, 321, that:

"* * * Such possession, in order to be sufficient to constitute notice, must be an actual, open, visible, and exclusive possession inconsistent with the title of the apparent owner by the record. The possession must be clear, unequivocal, and unambiguous. *It is insufficient if equivocal, temporary, or occasional.* It must be of a character which would put a prudent person upon inquiry; * * *." (Italics supplied.)

We conclude that the court properly determined that neither plaintiff was in possession of the right-of-way when the Marketable Title Act went into effect or was then making use of it so notorious as to be considered adverse possession; that by operation of § 541.023 the ease-

ment is conclusively presumed to have been abandoned and is therefore barred;[3] and that the servient tract should be relieved of the burden of the easement.

Affirmed.

SHERAN, JUSTICE (concurring specially).

While I do not think that the rule of B. W. & Leo Harris Co. v. City of Hastings, 240 Minn. 44, 59 N. W. (2d) 813, can be applied in the present situation where the interest involved is a limited easement, I concur in the result because of the trial court's finding to the effect that plaintiffs were not making observable use of the easement on January 1, 1948, so as to constitute possession within the meaning of Minn. St. 541.023, subd. 6, as construed in Wichelman v. Messner, 250 Minn. 88, 103, 83 N. W. (2d) 800, 814, and United Parking Stations, Inc. v. Calvary Temple, 257 Minn. 272, 101 N. W. (2d) 208.

OTIS, JUSTICE (concurring specially).

I concur in the result and in the opinion of Mr. Justice Sheran.

---

[3] The easement was not revived or reinstated by reference to it in a conveyance by the owner of the servient estate executed after January 1, 1948. United Parking Stations, Inc. v. Calvary Temple, 257 Minn. 272, 101 N. W. (2d) 208.