In re the Marriage of Benita A.
GULLY, n/k/a Benita Fjerstad,
petitioner, Appellant,

v.

Edward R. GULLY, Jr., Respondent.

No. C6–97–2277.

Supreme Court of Minnesota.

Sept. 2, 1999.

Jennifer R. Wellner, Circle Pines, for appellant.

Christopher E. Brevik, Brooklyn Center, for respondent.

## OPINION

**PAUL H. ANDERSON, Justice.**

Benita Fjerstad, formerly Benita A. Gully, asks us to reverse a decision of the Minnesota Court of Appeals and reinstate a district court order directing her ex-husband, Edward R. Gully, Jr., to pay $23,335.28 in retroactive child support and $1,500 in attorney fees. Fjerstad contends that the district court's order retroactively modifying Gully's child support obligation was proper under the provision of Minn. Stat. § 518.64, subd. 2(d)(1) (1998), governing retroactive modification of child support orders. She asserts that the district court properly concluded: (1) that Gully made material misrepresentations concerning his financial situation, (2) that Gully's material misrepresentations precluded her from bringing a motion for modification at an earlier time, and (3) that she promptly brought a motion for modification once she was no longer precluded from doing so. Fjerstad further contends that the district court acted within its discretion when it awarded her $1,500 in attorney fees. We reverse the court of appeals and reinstate the district court's awards of retroactive modification and attorney fees.

The marriage of respondent Edward R. Gully, Jr. and appellant Benita Fjerstad, formerly Benita Gully, was dissolved by judgment and decree on October 31, 1989, pursuant to a marital termination agreement. Under the terms of the judgment and decree, Gully was to pay $320 per month in child support, $20 of which was to be placed in an interest-bearing college savings account for the couple's minor son, then age two. Gully was to deposit an additional $20 per month into their son's college savings account. For the year prior to and the year subsequent to the couple's marital dissolution, Fjerstad obtained an order for protection against Gully. Pursuant to that order, Gully's visitation with his son was supervised until he completed domestic abuse counseling.

A year and a half after the dissolution, on March 29, 1991, Gully filed a motion for modification in district court seeking a reduction in the amount of his monthly child support obligation. At the April 15, 1991 hearing on his motion, Gully produced his income tax returns for 1988, 1989, and 1990 and represented to the court that he was "on the verge of bankruptcy." In a later affidavit, Fjerstad stated that at the time of the April 15 hearing she suspected Gully was working on a cash basis for Three Way Electric and was concealing

from the court what she believed to be a substantial part of his income. Fjerstad contends that she did not advise the court of these suspicions because at that time she was not represented by counsel and could not confirm what she believed to be true.

Based on Gully's income tax returns and representations, the court, on April 24, 1991, ordered Gully's child support obligation reduced to $106 per month, plus $20 per month to his son's college savings account. In addition, the court specifically ordered Gully to provide to Anoka County Child Support Enforcement (the county) paystubs or other verification of his income on a monthly basis and income tax returns on an annual basis.[1] The court did not order Gully to provide any of his financial information to Fjerstad.

Gully never provided any paystubs or tax returns to the county as was required by the 1991 child support modification order, and it appears that the county never took steps to obtain this information from him. Thus, for the next five years, Gully's monthly child support obligation remained unchanged except for statutorily-mandated cost of living adjustments that were automatically instituted. In September 1996, Gully was paying $120 per month to support his son.

Fjerstad learned that in 1994 Gully built a new home valued at $110,000 and purchased a 50% ownership interest in a boat that was docked on Lake Minnetonka. The boat was valued at between $20,000 and $30,000. On September 24, 1996, Fjerstad wrote to the county, requesting that her case be reviewed. The following day, the county received Fjerstad's letter and instituted a review.

To facilitate its review of Fjerstad's case, the county sent income and expense statement forms to both Fjerstad and Gul-

ly, requesting that each complete and return the forms. While Fjerstad completed and returned these forms, Gully did not return them or provide the county with any other verification of his income or expenses. As a result, the county determined Gully's income through a state wage match. On the basis of the state wage match, the county proposed that Gully's child support obligation be modified upward to $648.81 per month in child support, plus $110.54 per month in child care expenses.

Upon receiving the county's proposed modification of his child support obligation, Gully immediately requested an administrative hearing, which was subsequently held on January 14, 1997. Appearing at the hearing were Fjerstad, who was represented by counsel, Gully, who appeared pro se, and a representative from the county. Under questioning by Fjerstad's attorney, Gully admitted that he had been employed at Three Way Electric since at least 1993 at wages ranging from $15 to $17.50 per hour and that his income included some overtime. He further admitted that his employer gave him a $1,000 cash bonus in 1995 and a snowmobile at the end of 1996. When Fjerstad's attorney questioned Gully concerning the circumstances under which he received the snowmobile, he stated, "I received a used snowmobile for Christmas—or it was a five-year bonus for working for him for—for—fifth year coming up, fifth year coming on." Gully did not admit to working for Three Way Electric in 1991, the year he had sought the reduction in his child support payments.

Gully admitted that he had never provided any paystubs or tax returns to the county as required by the 1991 modification order. When asked why he had failed to comply with the order, Gully first stated

1. The district court's 1991 order stated:
Respondent shall report his income status to Anoka County Support Enforcement. On a monthly basis Respondent shall provide copies of his paystubs or other documents show-

ing his income for the month. Additionally, Respondent shall provide to Support Enforcement a complete copy of his income tax returns, including all supporting schedules, by April 30 of each year.

that he did not know he was required to do so, and then said, in reference to the 1991 order, "I don't read everything I get." However, Gully did follow the instructions accompanying the notice granting the administrative hearing because, as requested in those instructions, he brought his last three months' paystubs and his income tax returns for 1994 and 1995 to the hearing. Although Gully brought his income tax returns to the hearing, he refused to provide copies to the court or to Fjerstad, stating that he thought the paystubs, which were handwritten, should be enough documentation to properly calculate his income. Under cross-examination, he did admit that his gross income for 1995 had been $47,255 in wages, plus a $1,000 cash bonus.

The administrative law judge (ALJ) issued an order on February 25, 1997, adopting the modification figures the county had proposed. This order was subsequently reviewed twice, both times at Gully's request, and was eventually modified downward to bring the amounts originally ordered into compliance with amounts allowable under the Minnesota Child Support Guidelines. The child support order in effect at the time the district court record was transmitted to this court requires Gully to pay $620.06 per month in child support and $94.55 per month in child care expenses.

On May 6, 1997, Fjerstad filed a motion seeking arrearages for unpaid child support and nonpayment of monies into the college savings account from 1989 to 1996. The motion was set for an administrative hearing before an ALJ on May 27. Gully responded with a motion for change of custody. At the hearing on Fjerstad's motion, the ALJ referred the parties to the district court for consideration of any child custody issues. In a written order issued June 27, 1997, the ALJ ordered Gully to pay arrearages of $5,333.54—$3,493.54 in back child support and $1,840 for their son's college savings account. This order has been reviewed at least four times, each

time at Gully's request. The amount of arrearages was still in dispute at the time the district court record was transmitted to this court.

In a motion filed in district court on June 11, 1997, Gully sought custody of his son or, alternatively, a specific visitation schedule. Fjerstad filed a response requesting that the court deny Gully's motion. At the hearing on Gully's motion, the court orally ordered a specific visitation schedule. Due to a misunderstanding of this oral order, the court later issued a written visitation schedule.

On June 20, 1997, the same day she filed her response to Gully's motion for custody, Fjerstad filed a separate motion requesting that the district court: (1) retroactively modify Gully's child support obligation for the period of 1991–1996 and award her the amount retroactively modified, and (2) award her attorney fees in the amount of $2,500. In this motion, Fjerstad noted that Gully had directly violated the 1991 modification order in that he had never provided any paystubs or income tax returns to the county. In an attempt to gain financial information pertinent to her motion, Fjerstad served interrogatories and a request for the production of documents on Gully. Gully did not serve responses to the interrogatories and requests for documents until July 31, 1997, eight days before the scheduled August 8 hearing on Fjerstad's motion and 12 days past the date the responses were due. Thus, July 31, 1997 marks the first date on which Fjerstad obtained physical control of Gully's 1991–1996 tax returns and information on the purchase and subsequent sale of the home he built in 1994.

Four days before the hearing, Fjerstad deposed Joseph Green, Gully's friend and employer at Three Way Electric. Green was asked to bring certain financial documents pertaining to Gully to the deposition. Green brought the requested documents for 1994 and 1995, but stated that the documents for 1996 were not available because his company had just gone

through a "Work Comp audit." He further stated that his accountant would have the documents for the years prior to 1994 if the documents for those years had been retained. Green stated that he did not remember specifically when Gully began working for Three Way Electric, but that Gully started as a subcontractor in either 1990 or 1992.

The hearing on Fjerstad's motion was held as scheduled on August 8 before the same judge who had issued the 1991 modification order. At that hearing, Gully's attorney stated that Gully had not provided his paystubs or income tax returns to the county as required by the 1991 order, but contended that Gully had not done so purposefully. The attorney asserted that Gully's failure to comply with the 1991 order was not an attempt to materially misrepresent his financial situation to Fjerstad. In support of this contention, the attorney stated that Gully did not know he was required to submit the documents to the county and that he had been "in constant contact with [the county] asking [them] if they needed additional information with regards to his child support and they indicated that they did not." Gully's attorney also asserted that Gully's failure to provide paystubs and income tax returns had in no way precluded Fjerstad from bringing a motion for modification at an earlier time. Fjerstad's attorney responded by contending that Gully's failure to comply with the 1991 modification order was no mistake and that, mistake or not, it constituted a material misrepresentation of Gully's financial circumstances. Fjerstad's attorney also argued that Fjerstad was precluded from bringing a motion for modification at an earlier time because Fjerstad believed that she could not verify Gully's true income and that Fjerstad promptly brought a motion for modification when she was no longer precluded.

At the hearing, Gully and Fjerstad stipulated as to Gully's 1993–1995 income. Pursuant to that stipulation, Gully's net income after appropriate deductions was $21,367 annually, or $1,780.58 monthly, in 1993; $29,970 annually, or $2,497.50 monthly, in 1994; and $34,385 annually, or $2,865 monthly, in 1995. Multiplying the net monthly income amounts by the 25% guideline, Gully's child support obligation should have been $445.14 per month in 1993, $624.38 per month in 1994, and $716.36 per month in 1995. Gully's 1996 net income after appropriate deductions had been litigated before the ALJ in February 1997 and had been determined to be $2,480.25 monthly. Thus, multiplying the net monthly income amount by the 25% guideline, his child support obligation should have been $620.06 per month in 1996.

At the close of the hearing, the court advised Gully that a new order for child support would be issued and that, no matter what the financial consequences of that order, it would require Gully to submit his paystubs and income tax returns to both Fjerstad and the county in the future.[2] Subsequently, the court issued an order awarding Fjerstad retroactive child sup-

2. Specifically, the following exchange took place among the court, Gully, and Gully's attorney:

> The court: You can expect one thing, by the way, by way of any order, and you might have your client get ready and start doing this. I'm going to modify the provision in that '91 order so that not only does he have to provide his income information and his tax returns to the county, but he has to provide them directly to [Fjerstad]—
> Gully's attorney: Okay.
> The court:—every month, every year.
> Gully's attorney: Okay.

> The court: There's not going to be any more of this. That order is in effect. It was always in effect.
> Gully's attorney: Okay.
> The court: It was his duty to follow the order and it is continuing to be his duty. You understand that, Mr. Gully?
> Gully: (Nods affirmatively)
> The court: Do you understand it?
> Gully: Yes, sir.
> The court: It's a simple order. It's about four lines long. If you don't understand it this gentleman will explain it further to you, but I have no doubt that you understand it.

port for 1993 through 1996 in the amount of $23,335.28. The court denied Fjerstad's request for retroactive child support for 1991 and 1992. In its order, the court concluded that by failing to comply with the 1991 modification order, Gully had made material misrepresentations concerning his financial situation, that his material misrepresentations precluded Fjerstad from bringing a motion for modification, and that Fjerstad made a timely motion for modification when she was no longer precluded. In the memorandum accompanying its order, the court stated that Gully's failure to provide his paystubs and income tax returns to the county "constituted a material misrepresentation which precluded [Fjerstad] from earlier bringing a motion for modification."

The court also awarded Fjerstad $1,500 in attorney fees, noting both that Gully had "wilfully failed to comply with the [1991] order" and that, because of this noncompliance, it was "necessary for [Fjerstad] to incur significant fees in order to obtain information which [Gully] had a duty to produce." The court then noted that because Fjerstad had been living without child support owed to her by Gully, "she does not have the means to pay her fees and [Gully] should bear that burden."

Gully appealed the district court's ruling, arguing that the court erred in both its award of retroactive modification and its award of attorney fees. The court of appeals reversed, stating as to the modification award that the district court failed to make adequate findings and that an "independent review of the record fail[ed] to reveal any basis for the court's retroactive modification of child support or its award of attorney fees." *Gully v. Gully,* No. C6–97–2277, 1998 WL 297509, at *1–2 (Minn.App. June 9, 1998) (unpublished). In reaching its holding on modification, the court of appeals found that Gully's failure to provide paystubs and income tax returns to the county did not constitute a material misrepresentation of his financial

situation because his failure to provide the documents was not intentional. *See id.* at *1–2. The court also stated that Gully was not aware that he was under an obligation to provide the information and neither the county nor Fjerstad ever requested this information from him. *See id.* at *1. Further, the court concluded that Fjerstad had not been precluded from bringing a motion for modification at an earlier time. *See id.* Finally, the court reversed the district court's award of attorney fees, concluding that the district court failed to make adequate findings, specifically a finding of Gully's ability to pay. *See id.* at *2.

Fjerstad now appeals to this court, arguing that the district court did not err when it ordered retroactive modification because: (1) Gully made material misrepresentations concerning his financial situation by failing to comply with the 1991 order; (2) his material misrepresentations precluded her from filing a motion for modification at an earlier time; and (3) she promptly filed a motion for modification once she was no longer precluded from doing so. Fjerstad also argues that the district court's award of attorney fees was appropriate.

I.

The district court enjoys broad discretion in ordering modifications to child support orders. *See Moylan v. Moylan,* 384 N.W.2d 859, 864 (Minn.1986). We will reverse a district court's order regarding child support only if we are convinced that the court abused its broad discretion by making "a clearly erroneous conclusion that is against the logic and the facts on [the] record." *Rutten v. Rutten,* 347 N.W.2d 47, 50 (Minn.1984).

Minnesota Statutes § 518.64, subd. 2(d) provides that, in general, a district court may order retroactive modification of a child support order only back to the date the motion for modification was served on the party against whom retroactive modification is sought. However, that section also provides that retroactive modification

may be ordered to cover an even earlier period of time, provided the district court makes express findings that

the party seeking modification was *precluded* from serving a motion by reason of a significant physical or mental disability, a *material misrepresentation* of another party, or fraud upon the court and that the party seeking modification, when no longer precluded, *promptly* served a motion.

Minn.Stat. § 518.64, subd. 2(d)(1) (1998) (emphasis added). Here, in applying the statute, we must determine whether the court abused its broad discretion when it concluded: (1) that Gully made material misrepresentations concerning his financial situation when he failed to comply with the 1991 modification order requiring him to provide financial information to the county, (2) that Gully's material misrepresentations precluded Fjerstad from filing a motion for modification of child support, and (3) that Fjerstad promptly filed a motion for modification when no longer precluded.

A. Material Misrepresentation

■ First, we must ascertain whether the district court abused its discretion when it found that Gully materially misrepresented his financial situation. A "material misrepresentation" consists of two elements. The first element is that Gully must have made a misrepresentation. An individual makes a misrepresentation by either making "an affirmative statement that is itself false" or "by concealing or not disclosing certain facts that render the facts that are disclosed misleading." *M.H. v. Caritas Family Servs.*, 488 N.W.2d 282, 289 (Minn.1992). The second element is that the misrepresentation is material to the issue at hand. A misrepresentation is material when it "relates to a matter upon which a plaintiff could be expected to rely in determining whether to engage in the conduct in question." Black's Law Dictionary 977 (6th ed.1990); *see also Lunning v. Land O'Lakes*, 303 N.W.2d 452, 458 (Minn.1980) (stating that in the context of equitable estoppel for breach of contract "[a] fact is material if it is germane to the unconscionable conduct alleged and works a prejudice to the party"); *Preferred Risk Mutual Ins. Co. v. Anderson*, 277 Minn. 342, 349, 152 N.W.2d 476, 482 (1967) (stating that in the context of rescission of an insurance contract a misrepresentation is material when a party "relie[s] on [the misrepresentation] or suffer[s] detriment thereby").

■ Here, a specific provision in the 1991 modification order required Gully to provide the county with paystubs on a monthly basis and income tax returns on an annual basis. An obvious reason for this provision was to separate Gully and Fjerstad as completely as possible because of the domestic abuse that had occurred during the marriage. Moreover, in his 1997 memorandum accompanying his order of retroactive modification, the same judge who issued that 1991 order expressly stated two additional reasons he had included this provision. First, the provision was designed to relieve Fjerstad of the burden of hiring an attorney to gain access to Gully's financial information. Second, the provision "was intended to insure that [Gully's] support obligation could continue to be assessed." Thus, Gully was under a continuing obligation to provide financial information to the county and he failed to do so.

The record in this case supports a conclusion that, by continually failing to disclose his financial situation as required by the 1991 modification order, Gully rendered incomplete, as well as misleading, the financial information he had disclosed in 1991. *See Caritas Family Servs.*, 488 N.W.2d at 289. More specifically, each time Gully failed to submit a paystub or an income tax return, the county, the district court, and Fjerstad were left unaware that his financial situation had improved dramatically—from an imputed income of $4.25 per hour to an actual full-time income of between $15 and $17.50 per hour.

His financial situation had changed substantially since 1991, but the financial information disclosed in 1991 continued to constitute the basis for calculating the proper amount of his child support obligation. Thus, the record supports a conclusion that, on an ongoing basis since January 1992, Gully has misrepresented his financial situation. Accordingly, we conclude that the court did not abuse its discretion when it determined that Gully misrepresented his financial situation.

■ We also conclude that the district court did not abuse its discretion when it concluded that Gully's misrepresentation was material. His failure to comply with the 1991 order defeated the purpose of the order, which was to continuously monitor and appropriately modify his child support obligation. Therefore, his changing financial situation was a matter upon which: (1) Fjerstad could be expected to rely in determining whether to bring a motion for modification of child support, and (2) the county, which was effectively acting for Fjerstad, could be expected to rely in proposing appropriate modifications of his child support obligation. Fjerstad relied on her expectation that Gully was complying with the 1991 modification order and providing the county with his paystubs and income tax returns. Because she was unaware that he was failing to comply with the 1991 modification order, Fjerstad had no reason to know whether it was proper to bring a motion for modification.

The county also would have relied on documentation of Gully's changing financial situation had he provided that information to the county on an ongoing basis as he had been ordered to do. When Gully failed to disclose his financial situation to the county on an ongoing basis, the county was unable to continually assess his income. Thus, the county did not have the information it needed to propose appropriate modifications to Gully's child support obligation. The fact that the county proposed a substantial modification to Gully's child support obligation on December 4, 1994, as soon as the county's review of Fjerstad's case was completed, is perhaps the clearest evidence of the materiality of Gully's failure to comply with the 1991 modification order.

Gully contends that he did not make a material misrepresentation of his financial situation because he did not intend to do so. He contends that we should read the term "material misrepresentation" in Minn.Stat. § 518.64, subd. 2(d)(1) as requiring an intent element and then conclude that he did not intend to misrepresent his financial situation. He points specifically to the tort of intentional misrepresentation in support of his assertion. The court of appeals agreed with Gully's reference to intentional misrepresentation when, on appeal, it found that Gully did not intend to materially misrepresent his financial situation.

■ Resolution of this case does not require us to reach this specific issue of whether the term "material misrepresentation" as used in Minn.Stat. § 518.64, subd. 2(d)(1) requires an intent element. Here, even if intent is a requirement of material misrepresentation, we conclude that the district court did not abuse its discretion when it rejected Gully's assertion that he did not materially misrepresent his financial situation because he did not know he was required to comply with the 1991 modification order. The record clearly supports the court's conclusion that Gully "wilfully failed to comply with the [1991] order." Gully failed to comply with the clearly-worded 1991 modification order, declined to provide his financial information to the county when directly asked to do so during the county's 1996 review of his child support obligation, refused during an administrative hearing to disclose his income tax returns to the court, and responded 12 days late to Fjerstad's discovery requests for his financial documents. His assertion that he was "in constant contact with the county" has no support in the record. Gully's "intent" was not lost on the district court.

## B. Preclusion

The next issue, and possibly the most difficult issue to resolve, is whether the district court abused its discretion when it concluded that Fjerstad was precluded from bringing a motion for modification at an earlier time than she did. Minnesota Statutes § 518.64, subd. 2(d)(1) states that retroactive modification is appropriate only when "the party seeking modification was precluded from serving a motion" at an earlier time. We have not previously addressed the issue of preclusion in the context of child support statutes. The legislature has not provided a definition for the term in the statutes governing child support, and legislative history provides no assistance to our inquiry. Black's Law Dictionary defines the term as "[t]o prohibit or prevent from doing something; e.g. injunction." Black's Law Dictionary 1177 (6th ed.1990). The term "prohibit" is defined as "[t]o prevent," *id.* at 1212, and the term "prevent" is defined as "[t]o hinder, frustrate, prohibit, impede, or preclude; to obstruct; to intercept." *Id.* at 1188.

Because of the way in which Gully's reporting requirement was set up—he was ordered to provide financial information to the county and not to Fjerstad—we consider the time Fjerstad asked the county to review her case to be the time she brought her "motion" for modification. That date was September 24, 1996. Gully contends that Fjerstad was not precluded from bringing her motion at an earlier time because she was free to ask the county to review her case at any time after the 1991 modification order. Fjerstad argues that she was precluded from bringing her motion at an earlier time because: (1) she did not know Gully was failing to comply with the 1991 modification order by failing to disclose his financial information to the county, and (2) she was aware of no conclusive evidence that Gully had been earning substantially more than he had been representing to the court, to the county, and to her.

The definitions for the word "preclude" imply that two readings of the word "precluded" are possible—a very narrow definition and a broader definition. Under a narrow definition, a party seeking retroactive modification must demonstrate that he or she had literally no means by which to bring a motion for modification at an earlier time because of the other party's material misrepresentation. Under a broader definition, a party seeking retroactive modification must demonstrate that it would have been unreasonable, given the circumstances, for the court to expect him or her to have brought a motion for modification at an earlier time. Gully asserts that the dictionary definitions of "preclude" and "prevent" do not "provide a workable meaning for this matter." He urges that we should adopt yet another definition of "precluded" whereby a person is precluded from bringing a motion only when the other party intended to and did directly cause the person's failure to bring the motion at an earlier time.

■ In cases involving child support obligations, the court plays a unique role in that it sits as a third party, representing all of the citizens of the state of Minnesota to see that children benefit from the income of their parents. *Cf. Maranda,* 449 N.W.2d at 165 ("In dissolution cases, the court sits as a third party, representing all of the citizens of the state of Minnesota to see that a fair property distribution is made" (citing *Karon v. Karon,* 435 N.W.2d 501, 503 (Minn.1989))). When one party fails to disclose financial information he or she has specifically been ordered by the court to provide, financial information that would form the basis for a modification of his or her child support obligation, he or she prevents the court, the other parent, and in this case a third party as well from making sure that his or her child or children benefit from his or her income. Without this financial information, a motion for modification of child support would be unreasonable in that such a motion would be purely speculative.

Because the court plays a unique role in child support cases and because in such cases one party cannot bring a good faith motion for modification without proper financial information from the other party, we reject Gully's proffered definition of the term "precluded" as well as the narrow definition of that term. Rather, we adopt a broader definition of the term. Under this definition, a party is precluded from bringing a motion for modification at an earlier time when the party demonstrates to the district court that it would have been unreasonable to do so given the circumstances. Accordingly, we conclude that one party's failure to disclose financial information as ordered by a court can lead a court to determine that it was unreasonable for the other party to bring a motion for modification and to conclude that the party was precluded from bringing the motion at an earlier time.

Under this analysis, the district court, without abusing its discretion, could properly have concluded that Gully's failure to disclose his financial information to the county as required by the 1991 modification order precluded Fjerstad from bringing a motion for modification at an earlier time. An earlier motion might have been unreasonable in that Fjerstad had no reason to know that Gully was failing to provide his financial information to the county. Thus, believing that Gully was complying with the 1991 modification order but suspecting that he was hiding his income by being paid in cash for his work, she did not ask the county to review her case until she believed she had some information that could substantiate her suspicions that Gully had been hiding his income. Accordingly, we conclude that the district court did not abuse its discretion when it concluded that Fjerstad was precluded, by reason of Gully's material misrepresentation of his financial situation, from bringing a motion for modification at an earlier time.[3]

## C. Promptly Brought Motion When No Longer Precluded

The retroactive modification statute requires "that the party seeking modification, when no longer precluded, *promptly* serve[d] a motion." Minn.Stat. § 518.64, subd. 2(d)(1) (emphasis added). The district court concluded that Fjerstad promptly brought her motion for modification once she was no longer precluded from doing so. There is nothing in the record that leads us to a contrary conclusion. In fact, at the time Fjerstad asked the county to review her case, her request was based on speculation that the county might be able to determine that Gully's income had changed based on the information that he built a new home and purchased an ownership interest in a boat. The district court could even have conclud-

3. The dissent asserts that the majority has crafted "a results-oriented decision" on the issue of preclusion. But in order to reach its conclusion, the dissent has engaged in factfinding combined with speculation on its own factfinding. For example, the dissent finds that the parties' son repeatedly visited Gully's new home and speculates that these visits were sufficient to confirm Fjerstad's "longstanding suspicions that Gully was concealing his income." Such factfinding and speculation by the dissent is unwarranted and is contrary to the district court's findings of fact and the court's conclusion that "[Fjerstad] was precluded from serving a motion for modification. Once [Fjerstad] received this [income] information, she timely made a motion for modification." *See* Minn. R. Civ. P. 52.01 ("Findings of fact * * * shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."); *In re Estate of Balafas*, 293 Minn. 94, 96, 198 N.W.2d 260, 261 (1972) (stating that the standard of review under Minn. R. Civ. P. 52.01 is "the broadest exercised by an appellate court for, even though there is evidence to support a finding, the finding can be held to be clearly erroneous if 'the reviewing court on the entire evidence is left with the *definite and firm conviction* that a mistake has been committed.' ") (quoting *United States v. Oregon State Med. Soc'y*, 343 U.S. 326, 339, 72 S.Ct. 690, 96 L.Ed. 978 (1952); *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)) (emphasis added).

ed that it would have been unreasonable for Fjerstad to have brought a motion for modification in the district court based on these facts. Therefore, we conclude that the district court did not abuse its discretion when it concluded that Fjerstad promptly brought her motion for modification once she was no longer precluded.

Because we also conclude that the district court did not abuse its discretion when it concluded that Gully materially misrepresented his financial situation and that Fjerstad was precluded from bringing a motion for modification at an earlier time, we hold that the district court did not abuse its discretion when it awarded retroactive modification of child support to Fjerstad in the amount of $23,335.28.

## II.

■■■■ Gully argues that even if the statutory requirements have been satisfied, Fjerstad's claim is barred by the doctrine of laches. This equitable doctrine provides that, when one sits on one's rights for too long a time, that person's claim should be estopped from continuing because it would be inequitable to require the defendant to fight the suit. *See Corah v. Corah*, 246 Minn. 350, 357, 75 N.W.2d 465, 469 (1956). We have already concluded that Fjerstad promptly brought her motion for modification of child support once she was no longer precluded from doing so. Therefore, Gully's assertion that Fjerstad's claim is barred by the doctrine of laches lacks merit. We also note that it is a maxim of equity that "he who seeks equity must do equity, and he who comes into equity must come with clean hands." *Hruska v. Chandler Assocs., Inc.*, 372 N.W.2d 709, 715 (Minn.1985) (citing *Johnson v. Freberg*, 178 Minn. 594, 597–98, 228 N.W. 159, 160 (1929)). Further, we have stated that a party "may be denied relief where his conduct has been unconscionable by reason of a bad motive, or where the result induced by his conduct will be unconscionable either in the benefit to himself or the injury to others." *Id.* (quoting

*Johnson* at 597–98, 228 N.W. at 160). For the reasons already stated, Gully does not come before this court with clean hands, and, thus, he cannot seek the benefit of the equitable doctrine of laches.

## III.

■■■ Gully also contends, and the court of appeals held, that the district court abused its discretion when it directed him to pay to Fjerstad the amount of $1,500 for reasonable attorney fees. The standard of review for an appellate court examining an award of attorney fees is whether the district court abused its discretion. *See Ed Herman & Sons v. Russell*, 535 N.W.2d 803, 808 (Minn.1995).

Minnesota Statutes § 518.64 provides that Minn.Stat. § 518.14 shall govern awards of attorney fees for motions brought under that subdivision. Minn. Stat. § 518.64, subd. 2(g). Minnesota Statutes § 518.14 (1998) provides, in pertinent part, that

> in a proceeding under this chapter, the court shall award attorney fees, costs, and disbursements in an amount necessary to enable a party to carry on or contest the proceeding, provided it finds:
>
> 1. that the fees are necessary for the good-faith assertion of the party's rights in the proceeding and will not contribute unnecessarily to the length and expense of the proceeding;
> 2. that the party from whom fees, costs, and disbursements are sought has the means to pay them; and
> 3. that the party to whom fees, costs, and disbursements are awarded does not have the means to pay them.

■■■ Gully is correct when he states that the district court made no separate finding of Gully's ability to pay attorney fees. However, the language used by the court reasonably implies that the court believed Gully had the ability to pay Fjer-

stad's attorney fees. Specifically, the court concluded that Fjerstad did not have the ability to pay because she had gone for so long without an adequate amount of child support. The inference can be reasonably drawn that, because Gully had been paying only between $106 and $120 per month in child support for over six years, he did have the ability to pay. In addition, it should be noted that the judge who awarded the fees in this case was familiar with the history of this case and that, in making his decision to award attorney fees, the judge had access to the parties' financial records, including tax returns and other financial statements.

Gully also argues that attorney fees should not have been granted because Fjerstad's attorney failed to comply with Rule 119 of the Minnesota General Rules of Practice, which requires that requests for attorney fees be made by motion and that extensive documentation of work completed on a file and the attorney's rates must be provided with the motion. Gully is correct that the specific requirements of Rule 119 have not been met in that affidavits were not submitted with the motion. No case law has been generated on whether a district court may, in its discretion, waive the requirements of Rule 119, but the advisory committee comments to the rule state, "This rule is not intended to limit the court's discretion, but is intended to encourage streamlined handling of fee applications and to facilitate filing of appropriate support to permit consideration of this issue." Minn. R. Gen. P. 119, cmt. We agree with the advisory committee comment and conclude that when, as here, the court is familiar with the history of the case and has access to the parties' financial information, it may waive the requirements of Rule 119. Therefore, we hold that the court did not abuse its discretion when it directed Gully to pay to Fjerstad the amount of $1,500 for reasonable attorney fees.

Reversed.

GILBERT, Justice (dissenting).

I respectfully dissent. The majority determines that Fjerstad is entitled to retroactive modification of child support because the requirements of Minn.Stat. § 518.64, subd. 2(d)(1) (1998) were met. Because Fjerstad was at no time precluded from serving a motion, I disagree.

Minnesota Statutes § 518.64, subd. 2(d)(1) provides for retroactive modification of a child support order if "the party seeking modification was precluded from serving a motion by reason of * * * a material misrepresentation of another party * * * and that the party seeking modification, when no longer precluded, promptly served a motion * * * ." Thus, unless precluded from doing so, Fjerstad had an obligation to bring a motion for retroactive modification in a timely manner. Under the statute, if a party fails to timely bring a motion for modification, the district court may not impose retroactive modification of the child support obligations. At no time was Fjerstad precluded from serving a motion for modification. Accordingly, even assuming that the majority correctly determined that Gully materially misrepresented his income, the district court erred in awarding retroactive modification.

Fjerstad suspected as early as April 15, 1991 that Gully was concealing a substantial part of his income from her and the court. However, she said nothing to the court nor did she ask any questions regarding these suspicions at the April 15 hearing. Instead, she allowed the court to base Gully's child support obligations on the income that he represented to the court at that time because she could not confirm her suspicions.

As the years went by and the couple's son grew up, Gully continued to pay his court ordered child support obligation. Fjerstad continued to accept Gully's payments without questioning the propriety of the amount. While he continued to pay his court-ordered child support obligations, Gully never filed his updated income infor-

mation as required. Despite her suspicions, Fjerstad never asked the county whether they were receiving updated income information from Gully, nor did she ask Gully for updated information.

In 1994, Gully built a new home valued at $110,000. Although the record does not clearly indicate when Fjerstad learned of the new home, the couple's son repeatedly visited Gully between the time the new home was built and Fjerstad filed her motion for modification. This fact certainly appears to confirm Fjerstad's long-standing suspicions that Gully was concealing his income, yet Fjerstad still failed to request updated information from the county or Gully.

Instead, Fjerstad waited to contact the county until September 24, 1996, two years after Gully's new home was completed. Gully and Fjerstad later stipulated that Gully's annual income varied between $21,367 and $34,385 between 1993 and 1995. In August 1997, nearly eight years after the child support modification order went into effect, the trial court awarded $23,335.28 to Fjerstad as retroactive child support.

The majority now holds that a party is "precluded from bringing a motion for modification at an earlier time when the party demonstrates to the district court that it would have been unreasonable to do so given the circumstances." While I do not disagree with this definition of preclusion, under these facts I believe the majority errs in determining that it would have been "unreasonable" for Fjerstad to bring a motion prior to September 26, 1996. It is undisputed that Fjerstad had suspicions that Gully was concealing his income since April 1991, 5½ years before she even requested that the county review Gully's obligation. Although Fjerstad was aware of the 1991 order requiring Gully to submit his income information to the county, she never contacted the county to report her suspicions or to find out if Gully was complying with the April 1991 order. In fact, despite her continued contact with Gully

following their marital dissolution, Fjerstad never even requested income information from Gully himself.

Rather than following the statutory limitations, the majority instead crafts a results-oriented decision. There is no doubt that Gully acted in direct contradiction to the April 1991 order and his failure to provide the required information should not be condoned. There is also no doubt that Fjerstad is a sympathetic party who was not represented by counsel in 1991 and subsequently raised the couple's son with meager support from Gully. These facts, however, do not justify departure from the statute.

Public policy, determined by the legislature, encourages finality in judicial determinations. This policy is clearly expressed in the requirements of Minn.Stat. § 518.64, subd. 2(d)(1), which allows retroactive modification of child support obligations only in very limited circumstances. These circumstances have not been met under these facts. For 5½ years, Fjerstad had reasonable notice that Gully's financial situation may have changed dramatically, yet she did nothing to investigate or request information from Gully, nor did she ever ask the county or the court for a review. Now Gully must pay a lump sum of over $23,000, in presumably after-tax dollars, for retroactive child support. In failing to bring her motion in a timely fashion, Fjerstad also worked hardship on herself and needlessly deprived the couple's son of needed and deserved support. The majority, by failing to properly apply its own definition of preclusion, fails to honor the statutorily mandated limitations on retroactive modifications. Instead, the definition of misrepresentation has been stretched to new limits in support of retroactivity.

Because I can only conclude that Fjerstad had a choice to raise her concerns regarding concealed income, but chose not to do so in a reasonably timely manner, I would hold that she was not precluded

from bringing her motion for modification, and thus that Minn.Stat. § 518.64, subd. 2(d)(1) is not applicable to this case. The trial court also abused its discretion in awarding attorney fees. Accordingly, I would affirm the court of appeals.

PAGE, Justice (dissenting).

I join in the dissent of Justice Gilbert.

STRINGER, Justice (dissenting).

I join in the dissent of Justice Gilbert.