*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0864**

In re the Marriage of:
Carrie Marie Lauderdale, petitioner,
Respondent,

vs.

Scott James Lauderdale,
Appellant.

**Filed May 26, 2015
Affirmed in part, reversed in part, and remanded
Klaphake, Judge**[*]

Scott County District Court
File No. 70-FA-12-6417

A. Larry Katz, Corwin R. Kruse, Katz & Manka, Ltd., Minneapolis, Minnesota (for respondent)

Jana Aune Deach, Moss & Barnett, Minneapolis, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Rodenberg, Judge; and Klaphake, Judge.

## UNPUBLISHED OPINION

**KLAPHAKE**, Judge

In this marital dissolution action, appellant Scott James Lauderdale challenges a district court order denying his motion to amend the decree and awarding permanent

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

spousal maintenance and attorney fees to appellant Carrie Marie Lauderdale. Because the district court did not abuse its discretion by awarding respondent permanent spousal maintenance and attorney fees, but did abuse its discretion in valuing the marital estate, we affirm in part and reverse in part. We remand for a corrected valuation and reconsideration of the equitable division of marital property.

## D E C I S I O N

***Spousal maintenance.*** This court reviews a district court's maintenance award for abuse of discretion, which occurs if the district court's findings of fact are unsupported by the record or if the district court incorrectly applies the law. *Dobrin v. Dobrin*, 569 N.W.2d 199, 202 (Minn. 1997). A district court's findings of fact, including the court's determination of income for maintenance purposes, must be upheld unless they are clearly erroneous. *Peterka v. Peterka*, 675 N.W.2d 353, 357 (Minn. App. 2004). Minn. Stat. § 518.552, subd. 1 (2014) allows a court to award spousal maintenance if the spouse seeking maintenance lacks sufficient property or is unable to provide self-support through appropriate employment, in light of the standard of living established during the marriage. The district court must determine whether the maintenance is temporary or permanent "as the court deems just," after considering all relevant factors. Minn. Stat. § 518.552, subd. 2 (2014). Relevant factors include (a) the financial resources of the party seeking maintenance, including marital property apportioned to that spouse and the party's ability to meet needs independently; (b) the time necessary to become self-supporting; (c) the marital standard of living; (d) the duration of the marriage; (e) the loss of employment benefits and opportunities foregone by the party seeking maintenance;

2

(f) the age, physical condition, and emotional condition of the party seeking maintenance; (g) the ability of the party from whom maintenance is sought to meet the needs of both parties; and (h) the contribution of each party in the acquisition of marital property. *Id.* If the court is uncertain whether the relevant factors support an award of temporary or permanent maintenance, the court "shall order a permanent award leaving its order open for later modification." Minn. Stat. § 518.552, subd. 3 (2014).

Appellant argues that the district court abused its discretion by awarding respondent permanent maintenance. The district court did not explicitly state why it chose a permanent award but noted that respondent is employed as a teacher with no plans to retire and has a monthly budgetary shortfall. These findings recognize that respondent's income is insufficient to meet her needs for the foreseeable future. In the order denying appellant's motion to amend the award to a temporary award, the court stated that "where there is uncertainty, Courts are directed to order permanent maintenance leaving [the] order open for future modification." This statement reflects the court's resolution of this issue in favor of a permanent award of maintenance, according to the statutory mandate. The district court did not abuse its discretion by making an award of permanent maintenance.

*Attorney fees*. A district court shall award need-based attorney fees in a marriage dissolution proceeding to either party if the court finds "(1) that the fees are necessary for the good faith assertion of the party's rights in the proceeding and will not contribute unnecessarily to the length and expense of the proceeding;" (2) that the party from whom they are sought has the means to pay them; and (3) that the party awarded fees does not

have the means to pay them. Minn. Stat. § 518.14, subd. 1 (2014). "Conclusory findings on the statutory factors do not adequately support a fee award." *Geske v. Marcolina*, 624 N.W.2d 813, 817 (Minn. App. 2001). However, a fee award may be upheld where "review of the order reasonably implies that the district court considered the relevant factors and where the district court was familiar with the history of the case and had access to the parties' financial records." *Id.* (quotations omitted). This court reviews an award of need-based attorney fees for abuse of discretion. *Gully v. Gully*, 599 N.W.2d 814, 825 (Minn. 1999).

A district court may also award conduct-based attorney fees "against a party who unreasonably contributes to the length or expenses of the proceeding." Minn. Stat. § 518.14, subd. 1. Conduct-based attorney fees are also reviewed for abuse of discretion. *Sharp v. Bilbro*, 614 N.W.2d 260, 264 (Minn. App. 2000), *review denied* (Minn. Sept. 26, 2000). Because the standards for making need-based and conduct-based fee awards are different, fee awards must indicate the statutory basis for the award. *Geske*, 624 N.W.2d at 816.

The district court ordered appellant to pay $40,000 of respondent's attorney fees. The court based its award on both "need and conduct" but did not apportion the statutory grounds for the award. The court also found that (1) respondent had incurred $82,099.50 in reasonable and necessary legal fees; (2) respondent lacked the income or assets to pay her attorney fees without depleting assets awarded to her; (3) appellant had substantially greater income and assets to contribute to attorney fees than respondent; and

4

(4) appellant's failure to provide substantiated and credible financial records had unreasonably contributed to the length of the proceeding.

Appellant first argues that the court's findings are insufficient to support its award. We disagree. The district court made the findings required by Minn. Stat. § 518.14, subd. 1. Although the findings were concise, they were adequate to support the award of need-based attorney fees and were buttressed by other findings on appellant's means and respondent's need. *See Geske*, 624 N.W.2d at 817 (holding that a lack of specific findings on the factors in Minn. Stat. § 518.14, subd. 1 is not fatal to an award where review of the order shows that the district court considered the relevant factors). The district court carefully analyzed the income and budgets submitted by both parties. The court found that appellant's budget was not credible because of inconsistencies. In contrast, the court found that respondent's proposed budget "accurately reflected the marital standard of living," but was nevertheless "unreasonable, given that the marriage is over." The court reduced both appellant's and respondent's budgets accordingly.

At the time of the trial, Respondent had been a teacher for 24 years and earned a gross annual income of $77,500. Since 2003, appellant has been a real estate investor who buys foreclosed properties to renovate and sell. Appellant did not draw a salary from his real estate businesses, but instead used the business bank accounts for both personal and business expenses. The district court reasonably decided to calculate appellant's income by applying the formula in Minn. Stat. § 518A.30 (2014), for determining income from self-employment, which yielded a monthly income amount of $37,663.18. The court then reduced appellant's monthly income to $15,000, the

5

maximum amount allowed in the child support guidelines, which resulted in an annual income of $180,000. The disparity in the two parties' incomes, in addition to the high amount of fees owed by respondent, adequately supports the district court's findings on respondent's need for attorney fees and appellant's ability to pay them.

Appellant also argues that the district court erred in awarding fees because of respondent's failure to move for attorney fees or to provide an affidavit from her attorney enumerating the work performed as required by Minn. R. Gen. Pract. 119. A district court may waive the requirements of rule 119 when "the court is familiar with the history of the case and has access to the parties' financial information." *Gully*, 599 N.W.2d at 826. Here, the same district court judge was assigned to this case from its inception and had access to the financial information from both parties. In its order denying appellant's motion to amend the findings, the district court stated, "This court dealt with these parties for nearly two years and during this time had ample opportunity to observe the demeanor and actions of [appellant] and to examine the files, records and proceedings." As in *Gully*, we conclude that the district court's familiarity with the history of this case justified its decision to waive strict compliance with the requirements of rule 119. *Id.*

Finally, appellant argues the district court erred by failing to distinguish need-based and conduct-based in the attorney fee award. While the district court erred by failing to make this determination, respondent's need alone could have supported the entire award. In *Beck v. Kaplan*, the supreme court affirmed an award of $53,000 in need-based attorney fees when payment of fees would have required one party to deplete the party's limited assets, and the parties had very disparate financial circumstances. 566

6

N.W.2d 723, 727 (Minn. 1997). Likewise here, the district court found that respondent could not pay attorney fees without "spending down the assets awarded to her," and that appellant's income was much greater than respondent's. Thus, the district court's failure to apportion the amounts of fees awarded according to the statutory basis for awarding them was harmless error. *See* Minn. R. Civ. P. 61 (stating that the court must disregard any error or defect that does not affect the substantial rights of the parties); *Midway Ctr. Assocs. v. Midway Ctr., Inc.*, 306 Minn. 352, 356, 237 N.W.2d 76, 78 (1975).

***Valuation of marital estate***. In the property division, a large portion of appellant's award consisted of interests in his real estate businesses. To compute the values of these businesses, the district court subtracted amounts due for outstanding mortgages and investor promissory notes from the values of the subject real estate properties. Although appellant proposed that the court also subtract interest owed on the investor notes from the property values, the court declined to do so because it concluded that the interest rates were usurious. *Under* Minn. Stat. § 334.011, subd. 2 (2014).

A district court has broad discretion in evaluating and dividing property in a marital dissolution, and its decision will not be overturned absent an abuse of discretion. *Antone v. Antone*, 645 N.W.2d 96, 100 (Minn. 2002). A district court's valuation of a property item will not be set aside unless clearly erroneous on the record as a whole. *Maurer v. Maurer*, 623 N.W.2d 604, 606 (Minn. 2001). The district court's valuation determination need not be exact—only "within a reasonable range of figures." *Johnson v. Johnson*, 277 N.W.2d 208, 211 (Minn. 1979). Appellant argues that the district court

7

abused its discretion by failing to include the interest he owed on investor notes in valuing assets.

As an initial matter, we note that loans greater than $100,000 are not subject to the usury statute, and two of the investor notes were greater than $100,000. Minn. Stat. § 334.01, subd. 2 (2014). The district court abused its discretion by failing to include the interest owed on these notes in its valuation of the properties. Further, as to the investor notes less than $100,000, we also conclude that the district court abused its discretion by relying on the usury statute to exclude substantial amounts of interest from the valuation of appellant's businesses. The Minnesota usury statute is "intended to protect the weak and necessitous from being taken advantage of by lenders who can unilaterally establish the terms of the loan transaction." *Trapp v. Hancuh*, 530 N.W.2d 879, 884 (Minn. App. 1995). The record shows that neither appellant nor respondent were taken advantage of in negotiating the investor notes. Additionally, the record shows that both parties benefitted from the success of the businesses, which was due in part to increased capital made accessible via the investor notes. Because the investor notes both increased the value of the marital estate and contributed to the income that the district court attributed to appellant, an equitable distribution of property cannot be made without accounting for the unpaid interest on the notes. Therefore, we remand for the district court to include the interest owed on the investor notes in the valuation of the businesses and in its property division.

***Confession of judgment***. One of the debts at issue in the dissolution was a "confession of judgment" in the amount of $26,250 for forgiveness of mortgage debt

8

resulting from the short sale of the marital homestead. When the parties separated, the home was encumbered by several mortgages that, in total, were greater in value than the home itself. Appellant stopped making payments on the mortgages when the parties separated, causing delinquencies. As a condition of agreeing to a short sale, Bremer Bank, one of the mortgagees, agreed to forgive $286,642.75 of debt if appellant signed the confession of judgment.

In its dissolution decree, the district court did not allocate responsibility for the confession of judgment to either party, but retained jurisdiction over the confession of judgment until it was paid. In the order denying appellant's motion to amend, the district court held that the confession of judgment was not a marital debt. Appellant argues that the confession of judgment should have been treated as a marital debt. We agree.

"All property acquired by either spouse subsequent to the marriage and before the valuation date is presumed to be marital property regardless of whether title is held individually . . . ." Minn. Stat. § 518.003, subd. 3b (2014). In dissolution proceedings, marital debts are divided in the same manner as marital assets. *Korf v. Korf*, 553 N.W.2d 706, 712 (Minn. App. 1996). Upon marital dissolution, a district court has the discretion to award debts to one party only. *Lenz v. Lenz*, 409 N.W.2d 68, 69 (Minn. App. 1987). Here, the confession of judgment was so closely associated with the parties' marital home that it must be considered a marital debt. The home and the mortgages to finance the home were acquired during the parties' marriage. The confession of judgment was mandated by Bremer Bank as a condition for forgiveness of nearly $290,000 in marital debt, and both parties benefitted from appellant's signing the confession of judgment. In

9

light of these facts, the district court erred by classifying the confession of judgment as non-marital property.

The confession of judgment and the interest owed on the investor notes must be included in the marital property before the court can make an equitable division of that property. Therefore, we remand for the district court to re-value the marital estate and reconsider the equitable property division. The district court may either make its decision on the existing record or reopen the record, to the extent that it is necessary to do so.

**Affirmed in part, reversed in part, and remanded.**